(No. 39858.—

THE CHICAGO PARK DISTRICT, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(James E. Sandora, Sr., Appellee.)

*Opinion filed December 1, 1966.*

DAVID S. KERWIN, of Chicago, (DONALD S. SHIFRIS, of counsel,) for appellant.

HORWITZ & ANESI and TIMOTHY F. SULLIVAN, both of Chicago, (SIDNEY Z. KARASIK, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Two applications for adjustment of claims based upon May 22, 1962, and September 20, 1962, injuries to his back and legs were filed by James E. Sandora, Sr., and consolidated for hearing. The arbitrator awarded compensation predicated upon a finding of temporary disability resulting from the September 20 injury; the commission after hearing additional testimony found permanent, total disability resulted therefrom and awarded compensation at the rate of $40 for one week, $55 per week for 272 weeks and thereafter $150 per month for life, together with medical expenses aggregating approximately $2,800. The Cook County circuit court affirmed.

The employing Chicago Park District now contends the award is contrary to the manifest weight of the evidence, urging that in view of three prior industrial claims, extensive medical history involving the same parts of claimant's body as are here complained of, and the impeachment and absence of corroboration of claimant's testimony, a finding of an occupational injury or any particular industrial traumatic episode is contrary to the manifest weight of the evidence.

This case presents the familiar problem of an award predicated upon medical testimony that an unquestioned disability might or could be causally connected with a claimed occupationally related traumatic episode, the occurrence of which is not free from question.

Summarily stated, the record establishes that claimant, a painter, injured his back and left leg while employed by the city of Chicago in 1955 and again in 1958 while work-

ing for the Chicago Park District. The latter injury resulted in 18 months absence from work. On both occasions compensation was awarded. There is a suggestion of an earlier back injury in 1954. Claimant testified that on May 22, 1962, he was assigned to paint in East End Park; that while lifting two eight-foot ladders "I felt a sharp pain, like a tear, in the low part of my back," and that he did not work the balance of the day although he stayed on the job site. He also testified he told his "partner", Rocco Lucio, that he had hurt his back lifting the ladders. The following morning he experienced pain in his left leg and his back still hurt. He went to see Dr. Atlas, the Chicago Park District doctor, telling him of the injury. The doctor examined him but prescribed no treatment. Sandora missed about ten days of work, a day or two at a time, between May 22 and September 20, during which period his leg bothered him, particularly when working in the underground garage where he painted fan rooms and fans. He testified it was necessary for his partner and him to lift heavy steel fan covers weighing 150 to 200 pounds while doing this, and that he told superintendent Stromberg his back and leg had been hurt and requested a transfer to ground work. Sandora also stated he and his partner, Lucio, talked to John Smarz, the Park District engineer for the South Side requesting light work because of his back and leg and that Smarz said he would take care of it.

Sandora further testified that on September 20 he and Lucio were transferred to Russell Square Park where they painted the outer sides of buildings. While so engaged, Sandora felt a sharp pain in his back as he started to pick up a ladder. He worked the balance of the day and then saw his own doctor. At a retirement party that night claimant saw his immediate foreman and told him he had hurt himself lifting ladders that day and had seen his doctor. Sandora worked the next day, a Friday, and returned to

work on the following Monday, September 24, telling his "chargeman", Joe Mizgalski, about his back and leg. On the 25th he told Mizgalski he was going home unless there was some light work, and did so after calling engineer Smarz. Sandora later talked to superintendent Stromberg and the district personnel director telling them he was going into the hospital. On October 18 he entered the hospital, a laminectomy was performed in November, followed by a spinal fusion in December, and claimant had not worked since.

The Park District strenuously argues that claimant's testimony is so seriously impeached, as to the occurrences of May 22 and September 20, as to destroy the probative value thereof. We have carefully examined the record in those instances where impeachment is claimed. There are inconsistencies, but Sandora's testimony is not entirely without corroboration, and the testimony of the employer's witnesses, Lucio, claimant's painting partner, and Laurino, his supervisor, certainly cannot be thought to constitute un-equivocal denials of claimant's statements that he told them he had been "hurt". After so denying Sandora's testimony regarding this, Lucio admitted signing a written statement that Sandora had so informed him, Lucio's explanation being that he had not read this portion of the statement at the store where it was presented to him. Laurino, after denying Sandora told him of his injury "on May 22 or thereafter", then testified Sandora told him "before May 22" and finally that Sandora so informed him early in September. Some corroboration is also to be found for Sandora's version of the May and September episodes in that he saw a doctor very shortly after each, and the additional fact that he left work on September 25 and did not return. Without minimizing the problems posed by other aspects of the testimony, and while it may be that Sandora's claims actually are "fabricated afterthoughts" as contended

by the district, we cannot say that the commission's findings to the contrary are against the manifest weight of the evidence.

The medical history, reports and testimony rather clearly establish a spondylolisthetic condition in the region of the 5th lumbar vertebra prior to 1962, and the ultimate question is as to whether the May 22 and September 20 episodes aggravated a pre-existing condition. The uncontradicted testimony of Dr. Rubert, based upon a hypothetical question, provides some support for the existence of such causal relationship. Although conceding his post-operative examination could not determine whether the pre-operative conditions existed prior to 1962, and that such conditions could occur without trauma, Dr. Rubert pointed out that Sandora apparently did not need an operation prior to September, 1962, since an earlier medical recommendation had opposed surgery.

In short, this case may fairly be said to present a situation in which claimant has experienced leg and back troubles at intervals over a substantial period of time. It is true that the proof as to specific times and circumstances of claimed injuries is not free from doubt, and that there is conflict in the evidence. It is possible that claimant's present disability is the result of natural degenerative changes unaffected by trauma, or that such disability is the result of earlier or other injuries than those claimed, but the commission might legitimately conclude, as they apparently did, that a September 20 injury, aggravated a pre-existing condition. These questions are for the trier of fact and initially resolvable by the Industrial Commission. We have repeatedly held it to be the function of that body to determine the facts and within its sphere to draw reasonable inferences and conclusions from the competent evidence, and that the function of this court is limited to a determination of whether the commission's finding is against the manifest weight of the evidence. (*Gould National Batteries, Inc.* v. *Industrial Com.*

34 Ill.2d 151, 158; *Republic Steel Corp.* v. *Industrial Com.* 26 Ill.2d 32, 43; *Clifford-Jacobs Forging Co.* v. *Industrial Com.* 19 Ill. 236, 245.) We may not disturb an award based upon permissible inferences solely because we might have drawn opposite ones. *City of Rockford* v. *Industrial Com.* 34 Ill.2d 142, 144.

In our judgment the finding of the commission here cannot be said to be against the manifest weight of the evidence. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*