(No. 40135.— )

FIELD ENTERPRISES, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDNA MONTEZ, Appellee.)

*Opinion filed May 18, 1967.*

HACKBERT, ROOKS, PITTS, FULLAGAR AND POUST, of Chicago, (DOUGLAS F. STEVENSON, of counsel,) for appellant.

J. MICHAEL MADDA, of Chicago, (CHARLES WOLFF, of counsel,) for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

Field Enterprises appeals from the judgment of the circuit court of Cook County, which affirmed the decision of the Industrial Commission awarding compensation to the claimant, Edna Montez, for the death of her husband, Ray-

mond Montez, which occurred while he was in the employ of the appellant. The appellant contends that the award of compensation was erroneous, in that (1) the finding that the decedent died of a heart attack was purely speculation and unsupported by the evidence, and (2) the finding that this assumed heart attack was causally related to decedent's employment was contrary to law and the evidence.

At approximately 4:45 A.M. on March 13, 1962, the decedent, a pressman, was observed standing by a bulletin board in the press room by his brother, a fellow employee. His brother looked away momentarily and when he again looked in the direction of the decedent he observed that he had collapsed on the floor. Efforts to resuscitate him failed.

The evidence concerning the decedent's prior physical condition indicated that he had suffered from hypertension and elevated blood pressure for some time. About five years prior to death, he had been refused life insurance because of this condition, and on another occasion, approximately four years before his fatal collapse, his offer to donate blood was declined because of his physical condition. Six months before death, the decedent complained of grossly swollen ankles once or twice a week. About one month prior to death, he was bedridden for three days with what his wife believed to have been the flu, during which time he perspired freely. Thereafter he frequently complained of indigestion. He did not, however, consult a physician during this period.

On March 12, 1962, the decedent was working an 11:00 P.M. to 6:30 A.M. shift in appellant's press room. He had been assigned as an offside man on that particular evening. The job of an offside man on that shift consists of replating, *i.e.*, changing the printing plates on the press cylinder at 11:00 P.M., 1:00 A.M., 3:00 A.M. and at 4:30 A.M. The procedure involved taking a bullhorn, a wrench-like tool weighing between 10 and 15 pounds and approximately 18 inches long, inserting it in a square hole in the

cylinder and by applying force, turning it 360 degrees counterclockwise to loosen the plates on the cylinder. Each offside man during a full replating would take off and put on 8 plates, each weighing 35 to 40 pounds. The plate which was removed from the cylinder was placed on the floor beside the press. The new plate then was lifted into place on the cylinder which was about 40 inches above the floor, and tightened into place with the bullhorn. The entire operation took between 15 and 20 minutes. Between the times of replating, an offside man walked from one end of the press to the other, some 15 or 20 feet in each direction, controlling the flow of ink by a series of switches, helping to adjust the size of the paper to insure it came out aligned and in proper condition. When the machines were operating they caused considerable vibration and created a lingering ink mist.

The decedent performed a full replating at 11:00 P.M., a partial replating at 1:00 A.M., involving one half or three quarters of the number of plates, a partial replating at 3:00 A.M. and a final replating at 4:30 A.M. on the morning in question. His brother observed nothing unusual about the decedent when he picked him up for work at about 10:00 P.M., nor did he notice anything unusual when they had lunch at 2:30 A.M. However, at 3:30 A.M., the decedent complained to his brother of pain in the chest and asked for some antacid tablets. His brother noticed deceased was perspiring at this time. The decedent returned to work, but between 4:00 A.M. and 4:30 A.M. he went to a locker room where another employee noted that he was pale and was perspiring. The employee gave the decedent some antacid at his request.

At 4:30 A.M. he again complained to his brother of chest pains and went to the washroom to douse his face. He returned and when his brother asked how he felt just shook his head. His brother did not speak to him again and he collapsed at approximately 4:45 A.M.

Dr. Petty, a coroner's physician who prepared the death certificate and who was called as a witness by the claimant, stated that in his opinion the cause of death was organic heart disease of some type and that decedent died of heart failure because of it.

A Dr. Coe, called by the claimant, testified it was his opinion, based on a reasonable degree of medical certainty, that the cause of death was an acute coronary episode with a myocardial infarction. He testified that he believed that the totality of the circumstances surrounding deceased's death *viz.*, a hypertensive man of 33 years of age, who suffered from swelling of the lower extremeties, and who complained of pains in his chest on the night of his death, pointed to an acute catastrophic heart event, with infarction and death. The witness also concluded that the exertion of deceased in his replating work superimposed on the pre-existing hypertension was the cause of the heart attack.

The appellant's medical witness on the other hand, stated a number of conditions could have caused the employee's sudden death in view of his medical history. Appellant's witness further testified that even assuming that death was caused by a heart attack, he did not believe that the physical exertion of the decedent's employment could be considered a cause since this was exertion to which the decedent was accustomed.

On the basis of this evidence the arbitrator found that death was the result of an accident arising out of and in the course of employment. The Industrial Commission adopted the findings and the decision of the arbitrator and the circuit court of Cook County affirmed the Industrial Commission.

The appellant contends that the finding by the arbitrator that the deceased's death was the result of an accident *viz.*, a fatal heart attack, is completely unsupported by the evidence. This contention overlooks the coroner's physician's testimony that it was his opinion that the deceased died of

heart failure due to heart disease. Too, it omits considera-
tion of Dr. Coe's testimony who expressed the opinion that,
assuming the hypothetical facts of this case, he could con-
clude with a reasonable degree of medical certainty that the
cause of death was an acute coronary episode with myo-
cardial infarction. Appellant's own medical witness did not
exclude the possibility of death due to a heart attack, but
he stated that without an autopsy he could not be definite
about the actual cause of death. We believe that the evi-
dence here supports the inference that the cause of death
was a heart attack. The claimant was not required to negate
every other possible cause of death to establish death by
reason of a heart attack as a legitimate inference from the
evidence. *Clifford-Jacobs Forging Co.* v. *Industrial Com.,*
19 Ill.2d 236, 245; *Bruno* v. *Industrial Com.,* 31 Ill.2d 447,
449.

The appellant's complaint that there was not a showing
of a causal connection between the employment and death
is without merit. The claimant offered medical testimony of
such relationship. As we said in *Chicago Park District* v.
*Industrial Com.,* 36 Ill.2d 212, 216; "We have repeatedly
held it to be the function of that body [the Industrial Com-
mission] to determine the facts and within its sphere to
draw reasonable inferences and conclusions from the compe-
tent evidence, and that the function of this court is limited
to a determination of whether the commission's finding is
against the manifest weight of the evidence." The finding
here is certainly not against such manifest weight.

The appellant's citation of cases from certain States to
sustain the thesis that the ordinary work of an employee
cannot be considered the cause of a heart attack is not
pertinent. In *Rock Road Construction Co.* v. *Industrial
Com.,* Docket No. 40134, this court stated: "Almost two-
thirds of the jurisdictions which have considered this ques-
tion hold that usual exertion may be causally connected with

heart attacks (Larson, Workmen's Compensation Law, par. 38.30). We agree. The rule appellant promotes is inconsistent with our decisions * * * and would operate to preclude recovery in nearly all heart cases, even where the great exertion involved in an employee's normal tasks leaves little doubt as to causation. Morever, it would be incongruous to adopt a rule which would automatically allow compensation for a heart attack which follows a slight but unusual exertion and deny it for strenuous but usual exertion."

What is necessary in order to recover for a heart attack under the Workmen's Compensation Act was set forth in *Republic Steel Corp.* v. *Industrial Com.,* 26 Ill.2d 32, 45. "To come within the statute the employee must prove that some act or phase of employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor but only that it was *a* causative factor in the resulting injury." The death or injury must have been the result of a risk to which the employee because of his employment was exposed and not a risk to which any member of the general public is equally exposed. See *Illinois Bell Telephone Co.* v. *Industrial Com.,* 35 Ill.2d 474.

Conflicts in evidence were questions for resolution by the commission, which here could reasonably infer that the decedent's employment was a cause of his death and find that his case was compensable. The finding is not against the manifest weight of the evidence and will not be disturbed.

The judgment of the circuit court of Cook County is affirmed.