(No. 41501.—

LIVINGSTON SERVICE COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Donald Wink, Appellee.)

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

UNDERWOOD, J., took no part.

PRICE, SCHLAGER, BURGESON & THOMAS, of Chicago, (ROBERT J. LAHEY, and DAVID M. SMITH, of counsel,) for appellant.

LIVINGSTON, BARGER, BRANDT, SLATER & SCHROEDER, of Bloomington, and ADSIT, THOMPSON, STROCK & STRONG, of Pontiac, (WILLIAM R. BRANDT and LARADAY STROCK, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Livingston County affirming a decision of the Industrial Commission which awarded the employee, Donald Wink, permanent and total disability as a result of an accident which arose out of and in the course of his employment as a feed sales supervisor for the Livingston Service Company of Pontiac, Illinois, on April 12, 1963. Wink's duties as a feed sales supervisor included, among other things, the sale and handling of fertilizer and anhydrous ammonia. The anhydrous ammonia was stored on the premises of the Livingston Service Company in a large tank on the ground. Smaller portable tanks on trailers were used to transport the ammonia to local farmers.

On April 12, 1963, at about 3:30 to 4:00 P.M., a portable tank, which was still connected to the large stationary tank by a pipe and hose, had been pulled away from a loading dock, damaging some of the equipment. It appears that while the pressure on the line had been shut off by a valve in the pump house, there still remained some back pressure in the hose. When Wink pulled the hose off the pipe, the back pressure caused the fumes in the hose to come in contact with his face. His face was about six inches away

from the pipe and he inhaled some of the fumes that were expelled therefrom. At this time he noticed it became hard for him to breathe and that his eyes, nose, throat and lungs had a burning sensation. This condition lasted for several days. Wink continued performing his regular duties over the next six months, at which time he sought medical attention for his right arm from his family doctor, who diagnosed the condition as neuritis or neuralgia, and referred him to Dr. Schultz, a neurosurgeon in Champaign, Illinois. Dr. Schultz hospitalized Wink and performed various tests. While Wink was hospitalized in Champaign, Dr. John D. Lawrence, a specialist in internal medicine examined him on five or six occasions. Dr. Lawrence testified that the patient had told him of the exposure to the anhydrous ammonia and a physical examination revealed no abnormalities other than those expressed by Wink, which included a weakness of grip, reduced sensation and loss of position sense of the right hand and forearm, and a slight clumsiness in the motions of the fingers of the right hand.

Dr. Lawrence testified that Wink's problem was a neurological one and that he felt the petitioner suffered from multiple sclerosis, but could not unequivocally make that diagnosis. The doctor then discussed the symptoms and characteristics of multiple sclerosis, as well as Wink's past medical history. He further elaborated on the properties of ammonia gas which is an irritant having its most significant effect on the respiratory system. If inhaled in sufficient quantities, it will cause sudden, fatal inflammation of the smaller areas of the lungs. In smaller concentrations, it merely causes irritation with prolonged bronchitis or merely irritation. The severity of the exposure determines whether the condition is temporary or permanent.

After leaving the hospital in Champaign, Wink consulted Dr. Theron Randolph in Chicago. At the arbitration hearing Dr. Randolph gave the history taken from Wink and his wife, which included a 1954 complaint about numb-

ness in the rib region, and the exposure to the ammonia fumes in April of 1963, together with the consequent burning sensation in the chest and a headache and a general all-around slowdown after that. Dr. Randolph testified that as a result of certain tests performed on Wink, he concluded that Wink was susceptible to a wide range of chemical products, including anhydrous ammonia and its by-products. He further testified that there might or could be a causal connection between the exposure to ammonia and the condition as found in Wink.

The doctor's basis for his opinion of causal relationship was that there are various degrees of susceptibility to the man-made chemical environment, and the degree of susceptibility varies from time to time. A large number of people have a chemical susceptibility problem to which they are adapting or adjusting quite satisfactorily. This is true of most of us, or practically all of us. There are some in whom susceptibility becomes much higher, their reactions more disturbing and more acute, and if exposures are maintained, such reactions are sustained at a greater level. A massive exposure not infrequently makes persons infinitely more susceptible, so that thereafter they are never quite the same. The doctor further testified that it was his impression that some such mechanism may be operating in the case of Wink. Dr. Randolph further indicated that it was theoretically possible that Wink's condition may have resulted from some other type of exposure, although there is no other evidence supporting such a contention.

Dr. Harold H. Steinberg, a specialist in internal medicine and in the diagnosis and treatment of occupational diseases, examined Wink in May of 1964 and testified on behalf of the Livingston Service Company. He discussed the nature and properties of anhydrous ammonia and its effect on other patients which he had treated. Based on his examination, diagnosis was made that Wink was suffering from multiple sclerosis and that it is not probable that ex-

posure to ammonia fumes could result in sensitivities unexplained as far as medical knowledge is concerned. Other testimony indicated that the cause of multiple sclerosis is unknown at the present time, and that anyone may be subject to the disease. Further testimony indicated that while multiple sclerosis is a disease of the central nervous system, particles of ammonia might pass through the lungs and into the blood stream, but that this would be dependent upon the pressure of the ammonia gas or vapor inhaled.

When Dr. Randolph completed his tests on Wink, he instructed Wink's wife that she keep a daily account of the condition of Wink following exposures or contact with the substances to which Dr. Randolph indicated Wink was susceptible. This account was offered in evidence and indicated a severe reaction in the spring of the year when anhydrous ammonia was being applied to the fields near Wink's home.

The principal question confronting us is whether the evidence in the record indicates a causal relationship between the accident in which Wink breathed the ammonia fumes, and his present condition of being unemployable because of his severe sensitivity to normally common environmental elements.

The burden of proof is upon the employee to show such a causal relationship. Based on the evidence submitted by the employee, both the Industrial Commission and the circuit court found in favor of the employee, Wink. Unless their award is against the manifest weight of the evidence, we have no choice but to affirm. (*Chicago Park District* v. *Industrial Com.*, 36 Ill.2d 212; *Gould National Batteries, Inc.* v. *Industrial Com.*, 34 Ill.2d 151.) The medical evidence in the case is somewhat baffling, though the doctors testifying for both Wink and the employer admitted that the cause and effect relationship in this particular area of medical science is still somewhat theoretical.

Where medical testimony is in dispute and the findings

of the Commission are not contrary to the manifest weight of the evidence, the decision of the Commission will not be disturbed. *Pesovic* v. *Industrial Com.*, 33 Ill.2d 519.

The objective symptoms shown by Wink, together with the testimony of Dr. Randolph, create a reasonable inference of causal connection which the Industrial Commission might well draw.

The employer's contention that there were no objective symptoms shown in the record cannot be supported, considering the respondent's weight loss of five pounds per week in the spring of each year when anhydrous ammonia is being applied in fields near his home, the diary kept by Mrs. Wink, and the results of the tests performed by Dr. Randolph which resulted in his diagnosis of susceptibility to environmental exposures.

Considering the record as a whole, we cannot agree that the evidence shows no causal connection between Wink's exposure to ammonia fumes and his subsequent sensitivity to various environmental exposures. The evidence submitted by Wink, though disputed, was sufficient for the Industrial Commission to draw a reasonable inference of causation. (*Shell Oil Co.* v. *Industrial Com.*, 38 Ill.2d 286.) The judgment of the circuit court of Livingston County is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE UNDERWOOD took no part in the consideration or decision of this case.