JOEL W. ZIEN, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th District)   No. 1—91—0484

Opinion filed October 15, 1992.

500

Steven M. Levin, of Steven M. Levin & Associates, of Chicago, for appellant.

Fagel & Haber, of Chicago (Maynard B. Russell, Steven J. Teplinsky, and James A. Roth, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Joel Zien (Zien) appeals from the trial court's denial of his petition for administrative review of the decision of the Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago (the Board) that Zien was not entitled to duty-related disability benefits. Because we determine that the evidence of record establishes that Zien sustained a back injury while on duty on August 20, 1987, that has rendered Zien unable to work as a paramedic, we conclude that Zien should have been awarded duty-related disability benefits. Accordingly, we reverse and remand.

The record from the Board's proceedings with respect to Zien's application for duty-related disability benefits reveals the following. Zien testified at the Board's hearing that he had been a firefighter for the City of Chicago since October 1, 1975. He stated that on August 20, 1987, while on duty as a city paramedic, he was transporting a patient on a stretcher down a set of stairs, slipped on the stairs, lost his footing, and was pushed into a corner of the stairway. Zien testified that the stretcher fell against him when he was pushed into the corner. Zien stated that he was able to assist his partner in taking the patient to a nearby hospital. At that time, Zien was examined by medical personnel, who informed Zien that he had acute lumbar strain.

Zien was absent from work on August 20, 1987, to September 8, 1987. He testified that he returned to work, but was off work again on September 15, 1987, because of "unbearable pain." The record reflects that Zien did not return to work until April 1988. Thereafter, he again went on leave because of back problems on December 2,

1988. Zien did not return to active duty. His application for duty-related disability benefits was filed on November 7, 1989, while he was still employed as a paramedic by the City of Chicago.

The administrative record of the Board's proceedings contains extensive medical records and reports regarding the course of Zien's treatment for back pain following the August 20, 1987, incident. Although the parties' briefs and the Board's determination do not restate this evidence in detail, and the documents are not provided in a coherent or chronological order in the record, we will summarize the medical treatments received by Zien as reflected in the record.

The record indicates that Dr. Gregory Palutsis, an orthopedic surgeon who treated Zien extensively following his August 20, 1987, accident, determined that Zien had suffered a compression fracture of the T11 and T12 vertebrae. For example, from his examination of Zien on September 21, 1987, Dr. Palutsis recorded in his office notes that Zien had pain in the left paraspinal area at the thoracolumbar junction. The physician's physical examination revealed marked left thoracolumbar muscle spasm, and that Zien's pain became worse during right side bending and forward flexion. Dr. Palutsis' review of X rays led him to believe that it was likely that Zien had sustained a mild compression fracture of the T12 vertebra while lifting. The physician recorded his impression as "probable compression fracture T12 also associated with a musculoligamentous injury to the low back." Dr. Palutsis determined that Zien's activities should be restricted and that he should not return to work. Dr. Palutsis noted that he anticipated Zien would be fully recovered in four to six weeks.

Dr. Palutsis reached similar conclusions from his examinations of Zien throughout October and November 1987. The physician recorded in his office notes for this period that Zien continued to experience lower back pain and spasms. Dr. Palutsis concluded from these visits that Zien's "progress is best characterized as being slow, but steady."

In late November 1987, Dr. Palutsis' office examination of Zien revealed that Zien was still complaining of mid-thoracic back pain and that Zien was "still showing mild compression of T12." The physician noted that Zien was still very stiff, that he would bend to his toes very slowly, and that Zien had pain when he came to a standing position. Dr. Palutsis recommended that magnetic resonance imaging (MRI) be undertaken.

The record indicates that the MRI for Zien's lumbar spine and lower dorsal spine was performed at Evanston Hospital on December 3, 1987. The report of the MRI states that the "T12 vertebra showed no evidence of fractures." Following the MRI, Dr. Palutsis recorded

in his office notes from an examination of Zien on December 11, 1987, that the "MRI is totally normal with no evidence of disc or compressive phenomenon." Dr. Palutsis remarked that Zien still had significant left paraspinal muscle spasm, and that when Zien bent forward, "his thoracolumbar spine is not moving at all really." The physician recorded that Zien was beginning to do a little bit more at home, and so the doctor felt that some improvement was being made. However, because Zien's recovery was taking longer than the usual course, Dr. Palutsis recommended a bone scan, and "an EMG/NCV of his lower extremities."

According to Dr. Palutsis' notes following an office examination of Zien on January 11, 1988, the bone scan and test results were normal. The physician noted that Zien's lower back spasm had improved, his range of motion had increased, and that his overall movements were a little easier. Dr. Palutsis stated that his plan was to start Zien on a swimming and work-hardening program.

Thereafter, based upon Zien's participation in a work-hardening program, Dr. Palutsis noticed increased improvement in Zien's condition during his examinations of Zien in February and March 1988. In late March 1988, Dr. Palutsis found that Zien's lower back pain was "markedly improved." The physician observed that Zien's chief complaint was some right buttock pain extending down the thigh, and that Zien had been experiencing this pain for approximately four weeks. Dr. Palutsis recorded that it was his impression that this pain "may have been related to his physical therapy activities." The doctor's physical examination of Zien showed that his muscle spasms in the thoracic spine were markedly decreased and that Zien had good range of motion in this area. Dr. Palutsis also noted that Zien was "point tender over the SI joint on the right side" and decided to inject "this trigger point" with steroids to reduce the pain.

On April 27, 1988, following the injection, Dr. Palutsis found that Zien was doing very well and that the "trigger point" that had been injected was "resolved." The physician noted that Zien's only complaint pertained to right hamstring pain. Dr. Palutsis determined that Zien should be released to return to active duty and that he would "see him back in about 2 months if there are any residual problems."

The record reflects that a company entitled Rehabilitation Consultations for Industry, Inc. (RCI), in Oak Brook, Illinois, was retained from January to April 1988 to follow Zien's progress. The pertinent progress reports of this company, written by Cathy A. Mora, a registered nurse employed by RCI, recorded similar observations to those stated by Dr. Palutsis regarding Zien's treatments during this period.

For example, in her progress report dated March 29, 1988, Mora stated that she met with Zien on March 28, 1988, at Dr. Palutsis' office. According to this report, Zien indicated that his back "felt significantly improved." Mora noted in the progress report that Zien had complained of pain in his right hip. Mora stated in her report that she had also met with Dr. Palutsis, who had advised Mora that Zien's thoracic problem "seem[ed] to be for the most part resolved at this time." Mora recorded that Dr. Palutsis had advised that Zien was experiencing some pain in the right hip, but that the physician attributed this to Zien's aggressive physical therapy program. Thereafter, in her progress report for late April 1988, Mora observed that Dr. Palutsis felt that given Zien's condition, Zien should be able to return to work without restrictions "at this time."

Although Zien returned to work as a Chicago paramedic on April 28, 1988, he returned to Dr. Palutsis with complaints of back pain. According to Dr. Palutsis' office notes of August 12, 1988, Zien related to the physician that Zien was experiencing increased discomfort in his lower thoracic spine and also down his right leg. Dr. Palutsis noted that Zien had returned to full-time active duty and that Zien informed him that heavy lifting at work was particularly painful. The physician noted his impression that Zien "may be having a radicular symptoms [sic] in the right leg." Dr. Palutsis recorded that he intended to consult with "Dr. McMillan" with respect to whether Zien might be a candidate for an epidural steroid injection as a diagnostic maneuver.

Thereafter, an epidural steroid injection was performed upon Zien on October 5, 1988. Following an office examination in late November 1988, Dr. Palutsis stated that the injection provided approximately two to three weeks' improvement, after which Zien then felt his lower back and buttock pain recur. Dr. Palutsis noted that Zien "states that his main problems occur when he is lifting" and that as Zien "lifts someone on his job, and does any kind of twisting movement, that he experiences pain in the mid back area." Dr. Palutsis' notes specifically state that Zien's "location of the pain has been consistent throughout his injury. It is in the upper lumbar lower thoracic area." Dr. Palutsis' physical examination of Zien revealed tenderness in the lower back. The physician suggested that Zien should perhaps go to Lutheran General Hospital for a second opinion from Dr. David Spencer. It was Dr. Palutsis' opinion that Zien was "unable to tolerate his work environment."

Following an examination of Zien on December 15, 1988, Dr. Palutsis found that Zien felt worse. An MRI and bone scan had been

performed, but the results were negative. Dr. Palutsis decided to obtain a second opinion after a CT scan had been taken. On December 28, 1988, Dr. Palutsis found that Zien's CT scan was normal. The physician also determined that Zien had "had an exacerbation of his pain" and that Zien was worse than when the doctor had last seen Zien. Dr. Palutsis noted that the pain was localized in the thoracolumbar junction, and that the pain was worse with flexing, extension, or lifting. The physician again recorded his decision to get a second opinion from Dr. Spencer. Dr. Palutsis stated in his notes, "We may need to contact his work to get this approved, but I think Joel is heading towards some type of workman's disability."

The record contains a letter from Dr. David L. Spencer, an orthopedic surgeon at Lutheran General Hospital, dated January 11, 1989, and directed to the Chicago fire department. In his letter, Dr. Spencer noted that Zien's pain was in the lower back over the right buttock. The physician advised that a physical examination revealed no back spasm or deformity, and that Zien's neurologic examination was normal. Dr. Spencer related that studies "to date demonstrate a normal bony spine with no evidence of fracture, a normal bone scan with no evidence of a healing or previous fracture, and a normal MRI scan demonstrating no obvious disc herniation in the lumbar spine." Dr. Spencer stated that in "view of the persistent pain with entirely negative studies to date, one is left with the diagnosis of chronic discogenic back pain." The physician stated that Zien's condition "may not be curable" and that it might be necessary to place Zien on permanent restricted duty because of his disability.

From January 1989 through August 1989, Zien underwent physical therapy and participated in a work-hardening program. Because it would unduly lengthen this opinion, we do not state in detail the medical reports and notes appearing in the record with respect to these treatments. In summary, the reports of the pertinent medical health care professionals consistently reported that Zien suffered lower back, hip, and buttock pain, and that he was tender to lower back palpation. Work capacity evaluations and assessments indicated that Zien was unable to lift the amount of weight required to work as a paramedic, although Zien made some progress in his lifting ability and there was also an alleviation of some of the pain he was experiencing.

In October 1989, Zien was examined by Dr. Ivan Ciric, a neurosurgeon with the North Shore Neurosurgeons, S.C., in Evanston, Illinois. In a letter to Dr. Palutsis dated October 14, 1989, Dr. Ciric reviewed Zien's medical history and stated that in the physician's opinion, Zien's "pain is secondary to the persistent fracture at the

T11 vertebral body." Dr. Ciric stated that he "suspect[ed] his pain in the lower thoracic area, which is made worse by activities, work, etc., is a consequence of his unhealed fracture." Dr. Ciric recommended that Zien be fitted with a brace to help heal the fracture and that he stop "any and all forms of exercises involving bending, heavy lifting, etc."

Zien filed his application for duty-related disability benefits in November 1989. In a report to the Board dated December 13, 1989, the Board's physician, Dr. George S. Motto, reviewed Zien's medical history. Dr. Motto advised the Board that he had examined Zien and found that Zien "was an alert cooperative man who walked holding his back straight and in obvious pain." Dr. Motto reported that Zien "had difficulty getting into and out of a sitting position" and that there "was decreased range of motion of the back." The physician also stated that there was "tenderness where [Zien] was experiencing pain at the level of T-12 thoracic vertebra." Dr. Motto commented to the Board that Zien was disabled and "cannot and should not perform paramedic duties." Dr. Motto also advised that Zien's "injury dates back to line-of-duty" and that it "does appear that Mr. Zien's disability is a direct result of injuries he sustained while on duty in 1987." Dr. Motto observed that the "disability is permanent."

Dr. Motto also reported to the Board that Zien was scheduled to see another orthopedic surgeon named "Dr. McMillen." Dr. Motto advised that he had asked Zien to have a copy of this physician's report sent to Dr. Motto. However, the record does not contain any report from Dr. McMillen. It does, however, contained an unsigned, typed memorandum that is undated and bears the initials "RDM." This document stated that the writer "strongly doubt[ed]" that there was "in fact any pathology what so ever that would be related to [Zien's] continued back pain." The writer related that he believed Zien had "a painful back syndrome but we do not have a specific diagnosis and he has been extensively evaluated for this and I have no additional thoughts over a soft tissue injury to the back which in some fashion is being maintained." It was the writer's opinion that Zien had "no structural abnormalities in his back and as such does not require fusion or operative intervention." The writer recorded that he had suggested "repeat ct [sic] scan in view at our facility to see if there's any interval change since the previous ct and to characterize this region better with bone windows. This perhaps might give us a more specific diagnosis."

The Board held its first hearing on Zien's application for duty-related disability benefits on January 17, 1990. At this hearing, Dr.

Motto testified that Zien's back injury was related to the accident that had occurred while Zien was on duty on August 20, 1987. Dr. Motto also noted that he had received a report from Dr. McMillen, and suggested that Zien be sent to another doctor for an additional evaluation. The Board's hearing was continued to a later date.

In a letter to Zien dated January 30, 1990, the Board informed him that it had decided to defer his application for duty-related disability benefits "for the reason that there was not sufficient evidence to sustain your disability resulted from an act or acts of duty." The Board advised Zien that it sought further medical evaluation at the Board's expense. The Board stated that when the additional medical records and evaluations were made available, the Board would reconvene its hearing on his application.

The record reflects that Zien was sent to Mayo Clinic in Rochester, Minnesota, at the Board's expense for the additional evaluation. The report of the Mayo Clinic, dated March 7, 1990, and signed by Dr. Sherwin Goldman, noted that X rays of Zien's thoracic and lumbar spine were normal. Dr. Goldman's report also related that neurologic consultation of Zien found no neurologic cause for pain, and that Zien's central nervous system was normal. The physician's report diagnosed Zien's condition as chronic dorsal lumbar strain and musculoskeletal deconditioning. It further noted that a pain clinic consultation felt that Zien had muscle attachment pain and chronic strain and that Zien would benefit from local injections and rehabilitation.

At the Board's resumed hearing on March 21, 1990, Dr. Motto testified that Zien's problems with pain precluded him from ever performing paramedic duties. In response to a question of what chronic dorsal lumbar strain is, Dr. Motto explained as follows:

> "[a]nywhere where there are muscles with an acute stretch or trauma, the muscles and the ligaments that attach the muscle to the bones can be injured. Weakened, if you will. And when you do x-rays there is no obvious fracture, but yet the weakness and the strain or the problem with the inflammation or whatever is there. So, the person can have a persistent problem especially in *** extreme measures of lifting and twisting heavy loads, etc., and really not have a tremendous amount of objective evidence in the form of say nerve root compression or in the form of fractures."

Dr. Motto testified that he considered the report from Dr. Goldman of the Mayo Clinic to be a "reaffirmation of the initial evaluation." Dr. Motto stated that Zien had a strained back, in layman's terms, and that this injury was duty-related from Zien's accident on

August 20, 1987. Dr. Motto related that because of the injury, Zien can no longer work as a paramedic. Dr. Motto testified that "what the Mayo Clinic letter is saying here is that *** this is a permanent diagnosis."

In a letter to Zien dated March 31, 1990, the Board informed Zien that it had denied his application for duty-related disability benefits, because his disability was not the result of a specific injury, or of cumulative injuries, incurred in or resulting from an act or acts of duty. The Board did grant Zien ordinary disability benefits for the period December 2, 1989, to December 2, 1994, "without prejudice of pursuing any of the rights that you may have for the duty disability benefit."

Zien filed his complaint for administrative review on April 17, 1990, arguing that the Board's decision was against the manifest weight of the evidence. The trial court denied Zien's request for relief, and this appeal followed.

Upon review, Zien argues that the Board's decision should be reversed because it was against the manifest weight of the evidence. Zien contends that the evidence of record established that his back injury, which rendered him unable to work as a paramedic, was caused by the accident that occurred on August 20, 1987, when he slipped on a set of stairs as he was carrying a stretcher to transport a patient to a nearby hospital.

Under the firefighters' pension fund act, an active firefighter (including a paramedic) who becomes disabled "as the result of a specific injury, or cumulative injuries *** incurred in or resulting from an act or acts of duty, shall have the right to receive duty disability benefit." (Ill. Rev. Stat. 1989, ch. 108½, par. 6—151.) This statutory provision serves an equivalent purpose to the objectives of worker's compensation. (*Mitsuuchi v. City of Chicago* (1988), 125 Ill. 2d 489, 493-94, 532 N.E.2d 830.) The terms of the statute should be liberally construed in favor of the applicant to achieve its beneficent purpose. (*Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 598, 505 N.E.2d 1387.) Although the Board's factual determination is entitled to deference upon review, its decision should be reversed where it is against the manifest weight of the evidence. *Kellan v. Board of Trustees* (1990), 194 Ill. App. 3d 573, 585, 551 N.E.2d 264.

The Board claims that the evidence supports its determination that Zien failed to prove that his back injury was duty-related. Initially, the Board argues that its decision was proper because there was insufficient evidence to prove that Zien suffered from back prob-

lems. The Board notes that "[a]ll objective tests regarding Zien's injury were determined to be normal." The Board also observes that although Dr. Palutsis diagnosed Zien's injury as a compression fracture of the T12 vertebra, the "other physicians treating Zien found no compression fracture." The Board also points out that Dr. Motto testified that "there was no definite physical cause for Zien's back pain."

The record does not support the Board's claims. Dr. Motto specifically testified that there was a definite physical cause for Zien's back pain. Dr. Motto confirmed the diagnosis of Dr. Sherwin Goldman, of the Mayo Clinic, that Zien suffered chronic dorsal lumbar strain. Dr. Motto additionally testified that this had occurred because Zien's back muscles and ligaments had suffered an "acute stretch or trauma." Dr. Motto explained that "when you do x-rays there is no obvious fracture, but yet the weakness and the strain or the problem with the inflammation or whatever is there." According to Dr. Motto, a person "can have a persistent problem especially in *** extreme measures of lifting and twisting *** and really not have a tremendous amount of objective evidence in the form of say nerve root compression or in the form of fractures." Based upon this testimony, we cannot accept the Board's claim that Dr. Motto testified there was "no definite physical cause for Zien's back pain."

We also note that the record does not support the Board's contention that Dr. Palutsis was the only physician who diagnosed Zien's condition as a compression fracture of the thoracic vertebra. For example, Dr. Ivan Ciric, a neurosurgeon who also examined Zien and his medical records in October 1989, similarly concluded that Zien had suffered a "persistent fracture at the T11 vertebral body." Moreover, virtually all of the health care professionals who treated Zien following his August 1987 injury found that Zien suffered lower back pain, and often was point tender to palpation of the lower back.

In addition, we cannot accept the Board's claim that Zien's pain was "wholly subjective." There is nothing in the record before us to indicate or infer that Zien's back pain was feigned or exaggerated. We find nothing in the record to warrant an inference that Zien was fabricating a continuing back pain in order to receive duty-related disability benefits.

■ Next, the Board claims that its decision was supported by the evidence of record because this evidence demonstrates that Zien had completely recovered from his back injury when Zien was released for work in April 1988. The Board notes that "[f]ive months after the alleged injury, Dr. Patutsis [*sic*] found that Zien has recovered from the compression fracture of the T-12 vertebrae and Zien was released for

work without restriction." The Board contends that "Dr. Patutsis [sic] determined that Zien at that point only had a pulled hamstring" and that Zien "had full motion, full strength, and normal function." The Board further observes that the "physical therapy report of March 29, 1988, noted that Dr. Patutsis [*sic*] found Zien's thoracic problem was resolved and that he should be able to return to work." According to the Board, "Dr. Patutsis [*sic*], at that time, found that Zien had some trouble point irritation in the right hip which he attributed to physical therapy not to his injury."

Again, the Board's arguments are founded on misstatements of the evidence of record. According to the record, Dr. Palutsis determined in April 1988, almost nine months after Zien's accident, that Zien had recovered sufficiently that Zien should be allowed to return to work. However, in his office notes, Dr. Palutsis specifically observed that Zien would return in two months "to see if there were any residual problems." Also, in the reports of RCI by Cathy Mora, the registered nurse who was reviewing Zien's progress, Mora noted in March 1988 that Zien continued to complain of pain in the right buttock. Thus, the record indicates that these health care professionals had determined that Zien was well enough that he could return to work, not that Zien was completely and finally recovered from the back injury.

The Board additionally argues that although Dr. Palutsis resumed treatment for Zien's back pain in August 1988, there was no "causal connection between the alleged injury and the disability." The Board suggests that there were "intervening causes" that precipitated Zien's continued back pain after he returned to work in April 1988. In this regard, the Board contends that "Dr. Patutsis [*sic*] did not state his conclusions as to the cause of Zien's new alleged back pain." According to the Board, "Dr. McMillan [*sic*] and Dr. Goldman, likewise, did not attribute Zien's painful condition to his alleged duty injury."

However, the Board's claims mischaracterize the evidence of record. Dr. Palutsis specifically stated his conclusion that the cause of Zien's back pain in August 1988 was Zien's accident in August 1987 while Zien was on duty as a city paramedic. Dr. Palutsis recorded in his office notes in August 1988 that Zien's "location of the pain has been consistent throughout his injury. It is in the upper lumbar lower thoracic area." Dr. Palutsis also recorded his opinion that Zien was "unable to tolerate his work environment." Later, in December 1988, Dr. Palutsis recorded that he thought Zien was "heading towards some type of workman's disability." It is rather apparent from these

remarks of Dr. Palutsis that the physician believed Zien's resumed back pain in August 1988, and thereafter, was causally connected to Zien's August 1987 accident in which Zien initially hurt his back.

Moreover, we are unable to rely on a report from Dr. McMillen, as no report from this physician appears in the record. Although the record contains a memorandum from "RDM," we cannot ascertain who was the drafter of this memorandum. Furthermore, even assuming *arguendo* that this document constituted the report of Dr. McMillen, the document indicates no more than the writer's conclusion that there was no "pathology" to Zien's back pain that would require surgical intervention.

Also, the report of Dr. Sherwin Goldman, from the Mayo Clinic, stated that Zien suffered from chronic dorsal lumbar strain. Dr. Motto testified that this report from the Mayo Clinic confirmed Dr. Motto's own diagnosis that Zien suffered from a strained back because of Zien's August 1987 accident. There is nothing in the Mayo Clinic report that contradicts the testimony of Dr. Motto, or the conclusions of Dr. Palutsis, that Zien's continued back problems were caused by his August 1987 accident.

■ Lastly, the Board claims that the "basis of both Dr. Motto's and Dr. Goldman's conclusion that Zien was disabled was Zien's own subjective assertion that he suffered pain." The Board contrasts these physicians' observations with those of Dr. Palutsis. According to the Board, "Dr. Patutsis [*sic*] stated [Zien] recovered and could return to work. Dr. Patutsis [*sic*] found that Zien had full motion, full strength and normal function." However, as we have noted previously, Dr. Palutsis explicitly recorded his opinion that Zien's disabling back injury was causally related to Zien's slip on a set of stairs in August 1987. In addition, both Dr. Motto and Dr. Goldman reached the medical conclusion that Zien suffered chronic dorsal lumbar strain. It was the opinion of both Dr. Motto and Dr. Palutsis that Zien's back problems were caused by his August 1987 accident.

Based upon our review of the record, and the arguments of the Board on appeal, we find that the Board's denial of Zien's application for duty-related disability benefits was against the manifest weight of the evidence. According to the evidence of record, Zien slipped on a set of stairs as he was carrying a patient on a stretcher while Zien was on duty as a city paramedic. Zien was advised after the incident that he had suffered lumbar strain. Dr. Palutsis, the orthopedic surgeon who treated Zien for his back injury, determined that Zien has suffered a compression fracture of the T12 vertebra. Zien was required to undergo approximately nine months of physical therapy and

work hardening until, in late April 1988, Dr. Palutsis determined that Zien had made sufficient recovery to return to work as a paramedic. However, Zien's back problems recurred, and Dr. Palutsis, as well as Dr. Ciric, concluded that Zien's continued back problems were caused by the compression fracture he sustained at his August 1987 accident. Moreover, Dr. Motto and Dr. Goldman determined that Zien suffered from chronic dorsal lumbar strain. Dr. Motto explained at the Board's hearing that this condition was caused by Zien's August 1987 accident. All of the medical personnel were in agreement that Zien's disability is permanent and will prevent him from resuming his employment as a paramedic for the City of Chicago. In light of this evidence, we conclude that Zien should have been awarded duty-related disability benefits.

For the reasons stated, the decision of the Board is reversed, and the cause remanded to the Board for further proceedings consistent herewith.

In light of this disposition, we need not and do not address the parties' remaining arguments.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.