KENNETH WILFERT, Plaintiff-Appellant, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee.

First District (1st Division)    No. 1—92—1432

Opinion filed April 25, 1994.

540

Dowd & Bloch, of Chicago (J. Peter Dowd, of counsel), for appellant.

Fagel & Haber, of Chicago (Steven J. Teplinsky, Sara L. Thomas, and Sheryl L. Cohen, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Kenneth Wilfert appeals an order of the circuit court of Cook County denying his petition for administrative review of the decision of defendant Retirement Board of Firemen's Annuity & Benefit Fund of Chicago (Board) that plaintiff was not entitled to duty disability benefits. Plaintiff also appeals the trial court's decision denying him leave to amend his complaint to include a civil rights claim against the Board pursuant to 42 U.S.C. § 1983 (1988).

The record of the Board's proceedings with respect to plaintiff's claim for duty disability benefits indicates the following facts. Plaintiff, who appeared before the board *pro se*, indicated that he had attained the rank of fire paramedic with the Chicago fire department. Plaintiff testified that he had been a paramedic for five years and had been employed by the Chicago fire department for $3^1/_2$ years. On December 22, 1989, after dealing with a combative patient on a stretcher, plaintiff started having cramping in his hand, which he reported to his superior officer. The record indicates that plaintiff suffered pain in his left thumb and wrist. At 4:30 a.m. on December 23, 1989, plaintiff advised his superior officer that his hand was bothering him much more than before. Plaintiff went to Holy Cross Hospital, where he was told to make an appointment to see Dr. Melhouse, who was an orthopedic doctor. According to plaintiff, in early January 1990, Dr. Melhouse ran an EMG test on plaintiff that showed "slowing in C-5/C-6 and C-7." Plaintiff stated that Dr. Melhouse diagnosed him with a brachial plexus contusion and told him to rest for six weeks before a reexamination.

Plaintiff testified that he was also seen by Dr. Jablon, who plaintiff indicated was well known for hand surgery, and Dr. Zak, who was a neurologist. According to plaintiff, these doctors concurred that plaintiff suffered from a brachial plexus injury. Plaintiff testified that Dr. Zak prescribed Naprosyn and Flexeril and thrice-weekly physical therapy sessions at Sports Performance. Plaintiff indicated that Dr. Hugh H. Russell, who the record indicates was the medical director for the Chicago fire department, ordered him over to Baxter Medical Group for "work hardening" training without conferring with plaintiff's treating physician. Plaintiff indicated that while he showed some improvement from the initial physical therapy sessions,

he did work hardening training and "[a]fter Baxter, my whole complaints flared up even more worse."

Plaintiff saw his treating physician, who performed a MRI test and ordered plaintiff to continue with physical therapy. Plaintiff testified that he was still in therapy and had a lot of pain in his neck, underneath his arm, in the elbow, ribs and back shoulder muscles.

Pursuant to questioning, plaintiff indicated that prior to December 22, 1989, his left arm would become tired and he would have difficulty holding a book for a long period of time. Plaintiff also indicated that in March 1989, the ambulance he had been driving in response to a report of a drug overdose was struck by an automobile. Plaintiff testified that he had been proceeding through the intersection of 76th and Loomis on a green light at the time. Plaintiff indicated that he was smashed into the left side of the ambulance door, his arm went through the window and his head hit the top of the ambulance. Plaintiff testified that he was taken to the hospital, where he was diagnosed with a severe blunt trauma to the whole left side of his body. Plaintiff indicated that he returned to work and performed all of his duties a few days after the accident, though he had told Dr. Russell that his left side was still sore. Plaintiff further indicated that he had not worked since December 23, 1989.

Upon further examination by the Board's attorney, plaintiff indicated that he had seen Dr. Zak, who was recommended by the Chicago fire department, Dr. Jablon, Dr. Russell, and Dr. George Motto, who, the record shows, was the Board's physician.

Dr. Motto testified regarding his credentials, including his position as the Board's physician since 1974. Dr. Motto testified that he examined plaintiff on January 9, 1991, and had reviewed plaintiff's medical records. The record shows that plaintiff's medical records were admitted into evidence at the outset of the hearing without objection. These records, and duplicates thereof, consume dozens of pages of the record on appeal and will be referred to below as necessary. Dr. Motto testified that at that time, plaintiff was disabled and should not perform paramedic duties due to persistent difficulties with his left shoulder, arm and hand. Dr. Motto testified that these difficulties took the form of numbness, tingling, cramping and pain. Dr. Motto added, however, that the disability may not be permanent and that plaintiff should be seen in follow-up examinations.

Pursuant to questioning by the Board's attorney, Dr. Motto testified that plaintiff's complaints were "subjective with minimal objective findings." Dr. Motto referred to a February 1991 letter from Dr. Zak that indicated plaintiff had—in Dr. Motto's words—"some minimal functional decline in his left arm." The Board's attorney then asked the following question:

"Q *** Doctor, with your experience and having examined the applicant and hearing the testimony today, could you say within a reasonable degree of medical certainty that the accident of March 25, [19]89 and the incident of December 23, 1989, is not the cause of Mr. Wilfert's present medical disability?"

Dr. Motto answered "Yes." The Board then proceeded to vote on plaintiff's application for duty disability benefits. The Board voted to deny plaintiff's application, then voted to grant ordinary disability benefits. Plaintiff then obtained counsel, who sought reconsideration of the Board's decision. The Board denied the motion on March 20, 1991.

On April 2, 1991, plaintiff filed a petition for administrative review in the circuit court of Cook County. The transcript of the hearing on plaintiff's petition shows that the trial judge indicated that the record contained "a lot of medical statements that strongly suggest to the layperson that there must be a connection" between the duty-related incidents and plaintiff's injuries. The trial court indicated, however, that there was "no opinion expressing" the connection and that "it requires medical testimony." The trial judge believed the Board "relied on a summary that was just plain wrong," but acknowledged that the Board is the finder of fact. The trial court asked plaintiff's counsel whether there was any place in the record that expressed an opinion about causation. Plaintiff's counsel responded that anyone looking at the medical reports (including any group of laymen and any reasonable medical expert reviewing this record) would conclude that the injury was duty-related.

The trial court denied plaintiff's petition; the trial court later denied his motion for reconsideration and his motion to amend the complaint to include a civil rights claim against the Board pursuant to 42 U.S.C. § 1983 (1988). Plaintiff filed a timely notice of appeal to this court.

On appeal, plaintiff contends that: (1) the Board's decision to deny him duty disability benefits was against the manifest weight of the evidence; (2) the Board erred in failing to consider the reinjury he suffered in "work hardening" in reaching its decision; and (3) the circuit court erred in denying his motion for leave to amend his complaint. As the second issue is dispositive of the entire appeal, we turn to address that issue first.

■ Article 6 of the Illinois Pension Code provides that an active firefighter (including a paramedic) who becomes disabled "as the result of a specific injury, or of cumulative injuries *** incurred in or resulting from an act or acts of duty, shall have the right to receive duty disability benefit." (Ill. Rev. Stat. 1989, ch. 108½, par. 6—151.)

This statute serves an equivalent purpose to the objectives of workers' compensation. (See *Mitsuuchi v. City of Chicago* (1988), 125 Ill. 2d 489, 493-94, 532 N.E.2d 830, 831-32.) The terms of the statute should be liberally construed in favor of the applicant to achieve its beneficent purpose. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 217, 447 N.E.2d 394, 397; *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 598, 505 N.E.2d 1387, 1389.

Plaintiff has the burden of proving his disability resulted from an act or acts of duty. (*Evert v. Board of Trustees of the Fire Fighters' Pension Fund* (1989), 180 Ill. App. 3d 656, 661, 536 N.E.2d 143, 146.) However, plaintiff need not prove that an injury received on duty was the sole cause of his disability; the injury need only have contributed to the disability. (*Kellan v. Board of Trustees of the Firemen's Pension Fund* (1990), 194 Ill. App. 3d 573, 584-85, 551 N.E.2d 264, 271.) Generally, the Board's factual determinations are entitled to deference upon review and should be reversed only where they are against the manifest weight of the evidence. (See *Zien v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1992), 236 Ill. App. 3d 499, 507, 603 N.E.2d 777, 781.) In contrast, a reviewing court is not bound to give the same deference to an administrative agency on questions of law and statutory construction. *Worth v. Board of Trustees of Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353, 595 N.E.2d 51, 54.

It should be noted at the outset that the issue on appeal here is limited. The Board has granted plaintiff ordinary disability benefits. Thus, the administrative review is concerned solely with the issue of causation.

In this case, the record contains the Board's letter of February 21, 1991, that formally informed plaintiff of the Board's decision to deny plaintiff duty disability benefits "for the reason that the injury did not result from an act or acts of duty." This conclusion appears to be based solely on Dr. Motto's one-word response to the question on causation quoted above. Indeed, the Board notes that Dr. Motto was the only witness to testify as to causation. Moreover, the transcript of proceedings on administrative review indicates that the circuit court believed that Dr. Motto's testimony was the basis for the Board's decision.

Plaintiff contends that the Board erred in failing to consider the injury plaintiff sustained during "work hardening" when it denied his application for duty disability benefits. Plaintiff primarily relies upon *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 481 N.E.2d 684, a worker's compensation case. In *Unger*, the plaintiff al-

legedly suffered injuries due to the failure of a company doctor to diagnose his cancerous condition. (*Unger*, 107 Ill. 2d at 82, 481 N.E.2d at 686.) Our supreme court characterized the injury as the aggravation of a non-work-related disease. (*Unger*, 107 Ill. 2d at 86, 481 N.E.2d at 687.) The court concluded that the alleged injury was sustained "in the course of" plaintiff's employment and "arose out of" the employment relationship, as those terms are used in the Workers' Compensation Act. (*Unger*, 107 Ill. 2d at 87, 481 N.E.2d at 688.) The court reasoned that plaintiff's examination was " 'determined by the demands of his employment rather than personal factors.' " *Unger*, 107 Ill. 2d at 88, 481 N.E.2d at 688-89, quoting *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43-44, 210 N.E.2d 209, 211.

The Board contends on appeal that *Unger* is not applicable to the "work hardening" in this case because the *Unger* court interpreted a section of the Workers' Compensation Act barring a common law action by an employee against an employer or co-employee " 'for injury or death sustained *** while engaged in the line of *** duty as such employee.' " (See *Unger*, 107 Ill. 2d at 84, 481 N.E.2d at 687, quoting Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a).) However, the Board's argument ignores the rules cited above that article 6 of the Illinois Pension Code is supposed to serve the same objective as the Workers' Compensation Act and is to be liberally construed in favor of the applicant to serve that beneficent purpose. Moreover, the *Unger* court noted that the "line of duty" test is the same as the general test of "arising out of and in the course of the employment" applied in worker's compensation cases. (See *Unger*, 107 Ill. 2d at 85, 481 N.E.2d at 687.) Thus, while the term "act of duty" by itself has a specific statutory definition (Ill. Rev. Stat. 1989, ch. 108$^1$/2, par. 6—110), we conclude that the broader phrase "incurred in *or resulting from* an act or acts of duty" that appears in section 6—151 (emphasis added) (Ill. Rev. Stat. 1989, ch. 108$^1$/2, par. 6—151) should be interpreted similarly to the phrases quoted from the Workers' Compensation Act in *Unger*.

The Board also contends that *Unger* is distinguishable as a "coemployee" case. The *Unger* court, in concluding that the examination arose out of the plaintiff's employment, found "the reasoning in *Field Enterprises v. Industrial Com.* (1967), 37 Ill. 2d 335, [226 N.E.2d 867,] compelling when applied to the facts of the case under consideration." (*Unger*, 107 Ill. 2d at 88, 481 N.E.2d at 689.) A reading of *Field Enterprises* indicates that it is not a "co-employee" case; the worker suffered a heart attack while performing his normal job. (See *Unger*, 107 Ill. 2d at 88, 481 N.E.2d at 689.) Thus, we are not persuaded by the Board's argument that the rationale behind *Unger* should not apply to this appeal.

The Board also contends that, assuming *arguendo* that *Unger* is applicable, plaintiff failed to establish that his rehabilitation caused his disability. The Board again misapprehends the law of causation; plaintiff need only establish that the injury sustained in rehabilitation was *a* cause of his disability. We note in passing that the Board apparently made the same error at the hearing by asking only whether the March and December 1989 incidents were *the* cause of the disability.

Plaintiff has demonstrated from the record in this case that he presented a *prima facie* case that the "work hardening" injury was a cause of his disability. Indeed, plaintiff's argument is supported by the January 9, 1991, report of Dr. Motto—the Board's physician since 1974 and the physician on whose opinion the Board apparently relied in this case. Dr. Motto's report states as follows:

> "The applicant was applying to return to work in December of last year, but while performing a rehabilitative test, he reinjured his left shoulder during the weight lifting procedure. Since that time, he has had more pain and more difficulties with his left hand, arm and shoulder."

In the report, Dr. Motto concludes that "[a]t the present time, it appears that Mr. Wilfert is disabled and cannot and should not perform paramedic duties." The report identifies no other possible cause of plaintiff's inability to return to duty. Unlike *Evert v. Board of Trustees of the Fire Fighters' Pension Fund* (1989), 180 Ill. App. 3d 656, 536 N.E.2d 143, no physicians expressly attributed plaintiff's disability to a non-duty-related cause.

The Board claims that the rehabilitation caused only numbness and that a December 7, 1990, letter from Dr. Zak states that plaintiff no longer complained of said numbness. However, the Board does not cite to the record for the proposition that plaintiff suffered only numbness. Dr. Motto's report, quoted above, contradicts the Board's argument.

Furthermore, the Board points to nothing in the record that would contradict plaintiff's testimony that he was ordered to participate in the "work hardening" by Dr. Russell, the medical director for the Chicago fire department. Dr. Russell's January 8, 1991, letter to Dr. Motto confirms that "[t]he Department then sought an independent functional capacity evaluation on August 2, 1990, at Baxter." Indeed, the sessions are referred to as "work hardening" and the record shows they were undertaken in addition to physical therapy. Given this record, plaintiff made a *prima facie* case that his participation in "work hardening" was determined by the demands of his employment rather than personal factors.

■ In sum, we conclude that plaintiff made a *prima facie* case that he aggravated a preexisting injury as the result of an act or acts of duty—*i.e.*, participating in the "work hardening" and functional evaluation—and that "but for" the reinjury, he would have returned to duty.

The transcript of the hearing before the Board shows that the Board did not ask Dr. Motto whether the injury suffered in "work hardening" was a cause of plaintiff's disability. Indeed, the Board does not suggest on appeal that it considered the "work hardening" injury. Instead, the Board contends that it was not required to consider the reinjury because: (1) *Unger* does not apply to this case; and (2) plaintiff did not identify it in his application for benefits. As we have already rejected the first argument, we turn to consider the second.

The Board notes that plaintiff's application for duty-related benefits refers only to the December 1989 injury. Though not expressly stated by the Board, we infer that the Board is suggesting that plaintiff has waived his right to raise other incidents of injury. However, the record shows that the Board specifically asked plaintiff about other (albeit prior) incidents of injury to his left thumb, hand and shoulder. Moreover, the transcript of proceedings in administrative review show that plaintiff raised the "work hardening" injury before the circuit court. The Board could have argued waiver at that time, as the record shows that plaintiff first raised the "work hardening" injury before the circuit court in his reply memorandum on summary judgment. However, the Board failed to object. Thus, it is the Board's objection, rather than plaintiff's argument, that is waived on appeal.

Furthermore, the Board cites no authority on appeal for the proposition that the Board can ignore the "work hardening" and functional evaluation injury. Section 6—151 of the Illinois Pension Code states in relevant part as follows:

> "Any injury or sickness not reported to the board in time to permit the board's physician to examine the fireman before his recovery, and any injury or sickness for which a physician's report or copy of the hospital record is not on file with the board shall not be considered for the payment of duty disability benefit." (Ill. Rev. Stat. 1989, ch. 108½, par. 6—151.)

Had the legislature intended to exclude consideration of any injury or sickness not specified in the firefighter's application, it could have expressly stated such a limitation. Absent that express limitation, the statute shall be construed liberally in favor of the applicant to achieve the statute's beneficent purpose. In this case, Dr. Motto

examined plaintiff before his recovery and the reinjury is documented both in his report and in other physicians' reports that were admitted into evidence before the Board. Thus, the reinjury should have been considered by the Board.

In sum, the Board erred as a matter of law in failing to consider whether the "work hardening" reinjury was a cause of plaintiff's disability, given the facts and circumstances of this case. In light of this disposition, we deem it unnecessary to address additional arguments raised by the parties at this time.

For all of the aforementioned reasons, the decision of the Board is reversed and the cause is remanded to the Board for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and O'CONNOR, JJ., concur.