(No. 47343.—

DR. ARTURO RIOS *et al.,* Appellees, v. NOLAN B. JONES, Director of the Department of Personnel, *et al.,* Appellants.

*Opinion filed May 28, 1976.—Rehearing denied June 28, 1976.*

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and George H. Klumpner, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Harry G. Fins and Harold A. Harris, both of Chicago, of counsel, for appellees.

MR. JUSTICE CREBS delivered the opinion of the court:

We have granted the defendants leave to appeal from the decision of the appellate court holding that section 13a of the Medical Practice Act as amended by Public Act 77—2757 (Ill. Rev. Stat. 1973, ch. 91, par. 14a) is unconstitutional. *Rios v. Jones,* 25 Ill. App. 3d 381.

The several plaintiffs are all physicians who were born and educated in countries other than the United States and who have been employed by the Department of Mental Health of the State of Illinois. Each of the plaintiffs has been granted a State hospital permit pursuant to section 13a. That section first became law in 1951 and provided that the Department of Registration and Education had the authority to issue a limited license to practice medicine in all its branches to any applicant who was 21 years of age or over, of good moral character, had such training at schools which were reputable and in good standing· as under the circumstances the Department deemed sufficient

and had been appointed a physician in a hospital maintained by the State. (Ill. Rev. Stat. 1951, ch. 91, par. 14a.) The limited license enabled a physician to practice medicine only in the hospital designated on his license and only under the supervision of a medical officer of that hospital. The Act did not provide that the limited license would expire after a certain time period.

Section 13a was amended in 1957 to add the requirement that the applicant serve a one-year internship at a hospital approved by the Department before a limited license could be issued to him. The 1957 amendment also referred to the limited license as a State hospital permit. (Ill. Rev. Stat. 1957, ch. 91, par. 14a.) In addition, the amendment declared that the permit would entitle the physician to practice medicine in all of its branches in hospitals or facilities maintained by the Department of Public Welfare.

In 1961, the reference in the 1957 amendment to the Department of Public Welfare was expanded to include the Department of Public Health. In 1963 the reference to the Department of Public Welfare was replaced by reference to the Department of Mental Health.

Section 13a was significantly amended in 1965. (Ill. Rev. Stat. 1965, ch. 91, par. 14a.) That amendment provided, *inter alia,* that no State hospital permits could be issued which were for an indefinite period of time, that doctors who had previously been issued permits could apply for renewal of the permits, that each renewal was effective for a period of two years and that the doctors who had previously been issued permits could apply for renewals every two years. The amendment also stated that each person who was issued his first State hospital permit after July 1, 1966, would be entitled to receive no more than three renewals of the permit. Any applicant receiving his first permit after July 1, 1966, was required to submit proof to the Department, as a condition precedent to issuance of the original permit and each subsequent renewal, that he was

pursuing a course of instruction and study that would enable him to pass an examination for the issuance of a license to practice medicine in all its branches.

Section 13a was again amended in 1972 by Public Act 77—2757. That amendment states in relevant part that:

"As a condition precedent to the renewal of any state hospital permit on July 1, 1974 or on any renewal date thereafter, the permit holder shall be required to show proof of having passed an examination given by the Department of Registration and Education or to have passed an examination deemed by the Department to have been at least equal in all substantial respects to the Department's examination. The Department shall have no authority to issue a renewal of a permit to an individual who has failed to pass this examination. An applicant for renewal of a state hospital permit must submit proof to the Department of Registration and Education that he is pursuing such course of instruction and study as will provide the applicant with the necessary qualifications to successfully pass an examination for the issuance of a license to practice medicine in all of its branches." (Laws of 1972, at 2022.)

After the passage of Public Act 77—2757, the plaintiffs were informed that they would lose their employment unless they passed a medical examination.

The plaintiffs filed a complaint in the circuit court of Cook County alleging that Public Act 77—2757 was unconstitutional and requesting that the defendants be enjoined from enforcing it. The circuit court held that the Act was unconstitutional as to those plaintiffs having ten years or more of civil service and enjoined the defendants from enforcing the Act as to those plaintiffs. The court denied injunctive relief to the other plaintiffs.

The plaintiffs who were denied relief appealed to the appellate court, and the defendants cross-appealed from the order granting injunctive relief to the plaintiffs having ten years or more of service. The appellate court, holding that Public Act 77—2757 was unconstitutional, affirmed the order granting the injunction to the plaintiffs with ten

or more years service and reversed the order denying relief to the other plaintiffs.

One ground upon which the appellate court found Public Act 77—2757 to be unconstitutional is that the Act was unconstitutionally vague. It was held that a reading of the Act failed to make clear whether one or two examinations were contemplated. One possible interpretation of the Act is that an applicant for a State hospital permit had to pass one examination to get the permit and had to show that he was pursuing a course of study as preparation for another examination that in turn would entitle him to a general license. Another possible interpretation of the Act is that an applicant who sought renewal of his permit after July 1, 1974, must pass an examination while an applicant who sought renewal prior to July 1, 1974, must submit proof that he was studying to pass the examination. Under this second interpretation of the Act, only one type of examination is contemplated. The appellate court held that this ambiguity in Public Act 77—2757 created a second ambiguity. Since it was not clear whether one or two examinations were contemplated by the Act, it could not be determined what type of "course of instruction and study" was required. The appellate court found that Public Act 77—2757 was so uncertain that men of ordinary intelligence must guess at its meaning and differ as to its application.

We find that the appellate court erred in its determination that the issue before it was the constitutionality of Public Act 77—2757. After the parties had submitted briefs and argued orally before the appellate court but before the opinion of the appellate court was rendered, section 13a of the Medical Practice Act was amended by Public Act 78—1103 (Laws of 1974, at 692; Ill. Rev. Stat. 1975, ch. 91, par. 14a). The amendment became effective on August 4, 1974, while the appellate court did not render its decision until December 27, 1974. In the circumstances of this case the rule applies that where

the legislature has changed the law pending an appeal the case must be disposed of by the reviewing court under the law as it then exists, and not as it was when the decision was made by the trial court. (*Illinois Chiropractic Society v. Giello,* 18 Ill.2d 306.) A different situation might exist if Public Act 77–2757 had been put into effect so that the plaintiffs would have been required to take an examination. The appellate court, however, granted a motion to stay the medical examination that had been scheduled for the plaintiffs. The record before this court indicates that none of the plaintiffs were required to take an examination pursuant to the requirements of Public Act 77–2757. After August 4, 1974, the plaintiffs were not threatened by the application of that act but by the application of Public Act 78–1103. Under those circumstances, the issue before the appellate court was the constitutionality of section 13a of the Medical Practice Act as it stood on the date of the court's opinion.

Section 13a of the Medical Practice Act as amended by Public Act 78–1103 is sufficiently clear so that the ambiguity that may have existed after the passage of Public Act 77–2757 no longer exists. The Act provides that all State hospital permits were to expire on July 1, 1975, and that holders of permits were entitled to apply for one renewal which was to expire on the first day of July following the date of the renewal. As a condition precedent to the issuance or renewal of a State hospital permit, the applicant or permit holder was required to pass an examination within three months prior to the application for permit or renewal. A second condition precedent is that the applicant submit proof that he is pursuing a course of instruction and study that will provide him with the necessary qualifications to successfully pass an examination for the issuance of a license to practice medicine in all of its branches. The Act states further that the legislative intent of the amendatory act of 1974 is to extend to the Department of Mental Health and the

Department of Registration and Education a period of time in which to devise a plan either to replace the State hospital permit system or to prepare all permit holders to qualify for licenses to practice medicine in all its branches. Section 13a as it now stands clearly contemplates two types of examination. The first examination mentioned in the Act must be taken for an applicant to receive a State hospital permit or a renewal subsequent to July 1, 1975. The second examination referred to in the Act is that which is required to obtain a license to practice medicine in all its branches. The "course of instruction and study" mentioned in the Act obviously refers to the second examination. We therefore hold that the appellate court erred in finding that section 13a of the Medical Practice Act is unconstitutionally vague.

The appellate court also held that the examination requirements of Public Act 77—2757 violated the due process clauses of the Illinois and United States constitutions. It was determined that the doctors who had received State hospital permits had a vested property right in their employment and that the enforcement of Public Act 77—2757 would constitute a taking of that right without due process. The defendants argued that imposition of the examination requirements is a reasonable exercise of the State's police power and is intended as a measure to protect the public. Since section 13a of the Medical Practice Act as amended by Public Act 78—1103 still provides that an examination must be taken before a State hospital permit will be renewed, the issue before this court is, in this respect, the same as the issue considered by the appellate court.

The appellate court was correct in finding that the doctors who held State hospital permits had property rights which were protected by due process. In *Burden v. Hoover*, 9 Ill.2d 114, 118, we stated that "one who holds a license to practice medicine, be it a limited or a full license, has a 'property right' in the sense that laws

affecting him in his practice must satisfy due process of law."

The fact that the plaintiffs possess property rights and are entitled to due process protection, however, does not mean that those rights cannot be affected by State legislation. As the United States Supreme Court declared in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 44 L. Ed. 2d 572, 588, 95 S. Ct. 2004, 2016: "[T]he States have a compelling interest in the practice of professions within their boundaries, and *** as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." The demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society. (*Powell v. Jones,* 56 Ill.2d 70, 78.) If, after balancing these interests, the State's exercise of its police power is deemed to be reasonable, the legislation in question must be upheld.

In our judgment, the weight to be afforded the plaintiffs' interests in continued employment is not so great as to render the statute in question unconstitutional. The State's inherent police power gives it the right to enact reasonable legislation to secure the public health, morals, safety or welfare. That power obviously includes the right to establish licensing procedures for the medical profession. The State's interest in promoting the general welfare by licensing physicians is of great importance. We believe that it is reasonable to impose strict licensing requirements upon physicians who received their medical training in foreign countries. The medical education received by the plaintiffs may be inferior to, superior to or comparable to medical education available in the United States. The fact is, however, that our General Assembly cannot be expected to be a judge of the quality of foreign medical training facilities. We do not find it unreasonable that the legislature chose to terminate the State hospital permit

system through which doctors educated in other countries are permitted to engage in the limited practice of medicine in Illinois even though the quality of their education is not known. We note that holders of State hospital permits did not face immediate termination of employment. Public Acts 77—2757 and 78—1103 each provided that the doctors could retain their State hospital permits for a period of time while they prepared to take an examination for the issuance of licenses to practice medicine in all its branches. Accordingly, we hold that section 13a of the Medical Practice Act is not violative of due process as it now stands.

The plaintiffs also claim that the examination requirements of section 13a violate the equal protection clause of the fourteenth amendment to the United States Constitution as well as the privileges and immunities provision in section 2 of article IV of the Federal Constitution. They contend that since they are naturalized citizens the requirement that they take an examination is violative of the privileges and immunities clause, because doctors who were born and educated in the United States are not required to take the examination. Similarly, the plaintiffs assert that placing them in a different class than the doctors who were born and educated in this country constitutes a violation of equal protection. These arguments are without merit. The privileges and immunities clause is intended to prevent unreasonable discrimination by a State against citizens of other States. Since nothing in the record suggests that the plaintiffs are citizens of a State other than Illinois, the privileges and immunities clause is not applicable to this case. Moreover, the equal protection clause of the fourteenth amendment does not prevent the enactment of laws for the protection of the public health, safety, welfare or morals. This provision invalidates only those enactments that are arbitrary, unreasonable and unrelated to the public purpose sought to be attained and does not proscribe legislative classifications that are reason-

ably calculated to promote or serve the public health, safety, welfare or morals. (*City of Chicago v. Vokes,* 28 Ill.2d 475.) As previously stated, we find that the recent amendments to section 13a constitute a reasonable exercise of the State police power. Distinguishing between doctors who were educated in this country and those who were educated in foreign countries and establishing licensing procedures based on that distinction is not necessarily arbitrary, unreasonable or unrelated to the public purpose sought to be attained.

For the foregoing reasons, we uphold the constitutionality of section 13a of the Medical Practice Act. The judgment of the appellate court is reversed.

The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*