EUGENE R. GERSCH, Plaintiff-Appellant, v. THE DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—98—1291

Opinion filed November 5, 1999.

David Blumenfeld, Ltd., of Chicago (William C. Coughlin, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Paul Racette, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Eugene R. Gersch, has appealed the circuit court's affirmance of a final administrative decision by the Illinois Department of Professional Regulation (the Department) which ordered a nondisciplinary cancellation of the plaintiff's registration as a licensed clinical social worker. The Department's administrative decision was premised upon the finding that plaintiff lacked the requisite educational qualifications for such a license. On appeal, plaintiff challenges the circuit court's ruling, asserting that (1) the Department's decision was against the manifest weight of the evidence, (2) the regulatory statute enacted in 1989 is unconstitutional, (3) the Department lacked the authority to issue a nondisciplinary cancellation of plaintiff's license, and (4) the doctrines of *laches* and estoppel preclude the Department from canceling plaintiff's license.

The record reveals that plaintiff began working as a social worker shortly after earning his bachelor's degree in 1959 and prior to the enactment of any regulatory statutes. In 1967, Illinois enacted the Social Workers Registration Act (Ill. Rev. Stat. 1969, ch. 23, par. 5301

*et seq.*), which regulated the licensure of social workers for the first time. That statute created two tiers of licensing. The lower tier was designated "registered social worker," and the higher tier was designated "certified social worker," which required a master's or doctorate degree in social work. This statute also included a grandfather clause, allowing licensure as a certified social worker to those practitioners who lacked an advanced educational degree but had acquired sufficient clinical social work experience. Pursuant to that grandfather clause, plaintiff was licensed in 1969 as a "certified social worker" based upon his clinical social work experience, despite the fact that he had not earned a master's or a doctorate degree in social work.

Plaintiff's license remained in good standing when the Illinois legislature passed the Clinical Social Work and Social Work Practice Act (the Act) in 1989 (225 ILCS 20/1 *et seq.* (West 1996)). This statute paralleled the previous statute in that it also created two tiers of licensing. The lower tier was redesignated "licensed social worker," and the higher tier was redesignated "licensed clinical social worker." As with the prior statute, the higher tier, that of licensed clinical social worker, required a master's or doctorate degree in social work. In addition, a passing score on a required examination was necessary in order to obtain licensure at the higher tier. The 1989 statute contained a grandfather clause for those previously licensed as "registered social workers" under the lower-tier classification in the prior statute. However, no such exemption clause was included for those who, like plaintiff, had been licensed as "certified social workers" under the higher-tier classification.

Although plaintiff had not earned either a master's or doctorate degree, he submitted his application for licensure under the higher tier in 1989. His application, which accurately reflected his educational achievements, was approved by the Department, and he was permitted to sit for the necessary examination. Plaintiff took the exam twice and received a passing score the second time in June 1990. Thereafter, the Department issued plaintiff a license as a licensed clinical social worker under the higher tier specified in the 1989 Act.

In late 1994, the Department discovered that plaintiff's license had been erroneously issued, and the Department attempted to resolve the matter informally. However, those efforts were unsuccessful, and on May 30, 1995, the Department filed an administrative complaint against plaintiff. The Board adopted in its entirety the report and recommendation of the administrative law judge (ALJ), which found that plaintiff was not qualified for licensure as a licensed clinical social worker under the higher-tier classification. The ALJ also concluded

that plaintiff had misrepresented his qualifications on his application for licensure. Accordingly, the ALJ recommended that plaintiff's license be rescinded and that he be issued a license as a licensed social worker under the lower-tier classification. On August 25, 1997, the Department issued a final administrative decision "canceling" plaintiff's license under the higher tier and ordering that he be issued a license under the lower tier.

Plaintiff sought administrative review of this decision, and the circuit court affirmed the Department's decision in its entirety.

■ We initially address plaintiff's claim that the circuit court erred in finding that the 1989 Act was constitutional. We review de novo the circuit court's decision with respect to a statute's constitutionality. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 123, 703 N.E.2d 1 (1998); *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420, 665 N.E.2d 795 (1996). The party challenging the validity of a statute bears the burden of clearly establishing any constitutional invalidity. A statute is presumed to be constitutional, and when construing a statute, a court should uphold the statute's validity if reasonably possible. *Cassidy*, 184 Ill. 2d at 123; *People v. Jeffries*, 164 Ill. 2d 104, 111, 646 N.E.2d 587 (1995).

Plaintiff argues that the Act violates his substantive due process rights because it failed to include a "grandfather" clause exempting him from complying with the advanced educational requirements in the licensing statute. Defendants counter this argument by asserting that the legislature was under no constitutional obligation to include a "grandfather" exception in the 1989 Act because the enactment of that statute was not the first time the profession had been regulated. We note, parenthetically, that the plaintiff and the Department rely primarily upon the same cases in support of their respective arguments.

■ According to the cases cited by the parties, in the context of the regulation of professions and occupations, a "grandfather" clause is a special provision made for the existing practitioner in a statute which regulates a profession for the first time. *Miller v. Department of Professional Regulation*, 276 Ill. App. 3d 133, 140, 658 N.E.2d 523 (1995); *Taylor v. Hayes*, 131 Ill. App. 2d 305, 309, 264 N.E.2d 814 (1970). " 'The purpose of an exception or grandfather clause is to exempt from the statutory regulations imposed for the first time on a trade or profession those members thereof who are then engaged in the newly regulated field on the theory that they who have acceptably followed such profession or trade for a period of years, or who are engaged therein on a certain date, may be presumed to have the qualifications which subsequent entrants to the field must demonstrate by examina-

tion. *Watson v. Maryland*, 218 U.S. 173, 30 S. Ct. 644, 54 L. Ed. 987 [1910]; [citations].' " *Taylor*, 131 Ill. App. 2d at 309, quoting *State ex rel. Krausmann v. Streeter*, 226 Minn. 458, 463, 33 N.W.2d 56, 59 (1948).

In *Berger v. Board of Psychologist Examiners*, 521 F.2d 1056 (D.C. Cir. 1975), the United States Court of Appeals quoted that portion of the *Taylor* opinion that held that " 'the right of the plaintiff to pursue his profession was fixed during the pre-regulatory period[,] and any subsequent legislation affecting his profession must be reasonable as it affects his special situation.' " *Berger*, 521 F.2d at 1063, quoting *Taylor*, 131 Ill. App. 2d at 311.

■ We note, however, that the holdings of these cases were premised upon the outmoded "doctrine of vested rights" and upon the conclusion that an individual has a cognizable due process right in the continued practice of his or her profession. See *Miller*, 276 Ill. App. 3d at 141. None of these cases applied current constitutional analysis, which looks to whether the affected right is fundamental and recognizes the state's police power, *i.e.*, the government's inherent right to enact legislation protecting the health, safety, and welfare of its citizens. See *Rios v. Jones*, 63 Ill. 2d 488, 496-97, 348 N.E.2d 825 (1976). Thus, the question of whether the right to pursue one's profession constitutes a fundamental right has not been addressed in any of the cases cited above or in the briefs filed by the parties.

■ Substantive due process protects fundamental liberty interests against infringement by the government. *Reno v. Flores*, 507 U.S. 292, 301-02, 123 L. Ed. 2d 1, 16, 113 S. Ct. 1439, 1447 (1993); *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 117 L. Ed. 2d 261, 273, 112 S. Ct. 1061, 1068 (1992). When confronted with a constitutional challenge premised upon due process grounds, the threshold inquiry is whether the challenged statute purports to restrict or regulate a fundamental right. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 329, 538 N.E.2d 1140 (1989); *Plyler v. Doe*, 457 U.S. 202, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982).

■ If the statute restricts a fundamental right, it must be examined under strict scrutiny. *Plyler*, 457 U.S. at 216-17, 72 L. Ed. 2d at 798-99, 102 S. Ct. at 2394-95. Pursuant to that analysis, legislation that significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate that state purpose. *Plyler*, 457 U.S. at 216-17, 72 L. Ed. 2d at 798-99, 102 S. Ct. at 2394-95. If, however, the statute does not affect a fundamental right, it must be examined under the rational basis test, which requires the legislation to be upheld if it bears a rational relationship to a legitimate legisla-

tive purpose and is neither arbitrary nor discriminatory. *Potts*, 128 Ill. 2d at 329.

■ We acknowledge that individuals enjoy certain property rights in the continued practice of their professions, and those rights are entitled to due process protection. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 332, 538 N.E.2d 1140 (1989); *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton*, 105 Ill. 2d 389, 397, 475 N.E.2d 536 (1985); *Rios v. Jones*, 63 Ill. 2d 488, 496-97, 348 N.E.2d 825 (1976); *Burden v. Hoover*, 9 Ill. 2d 114, 118, 137 N.E.2d 59 (1956). However, this fact does not mean that those rights cannot be affected by state legislation. *Potts*, 128 Ill. 2d at 332, quoting *Rios*, 63 Ill. 2d at 497. Indeed, the Illinois Supreme Court has unequivocally held that the right to pursue a profession is not a fundamental right for due process purposes, and legislation infringing upon that right need only be examined under the rational basis test. *Potts*, 128 Ill. 2d at 330, citing *People v. Gurell*, 98 Ill. 2d 194, 213, 456 N.E.2d 18 (1983).

Because plaintiff's right to continue practicing his profession does not implicate a fundamental right, we are required to employ the rational basis test in reviewing the constitutionality of the licensing statute challenged here. *Potts*, 128 Ill. 2d at 329. In so doing, we must determine whether the Act bears a rational relationship to a legitimate legislative purpose and that it is neither arbitrary nor discriminatory. *Potts*, 128 Ill. 2d at 330. Whether a statue is wise or whether it is the best means to achieve the desired result are matters left to the legislature and not the courts. *People v. Shephard*, 152 Ill. 2d 489, 503, 605 N.E.2d 518 (1992). As long as there is a conceivable basis for finding the statute is rationally related to a legitimate state interest, the law must be upheld. *Potts*, 128 Ill. 2d at 332.

■ States have a compelling interest in regulating the practice of professions within their boundaries, and they have broad power to establish standards for licensing practitioners in order to protect the public health, safety, and other valid interests. *Potts*, 128 Ill. 2d at 332, quoting *Rios*, 63 Ill. 2d at 497. A state may impose those professional educational requirements that it believes necessary to protect its citizens (*Abramson v. Gonzalez*, 949 F.2d 1567, 1580 (11th Cir. 1992)), and the deprivation of an individual's right to pursue a particular profession is not arbitrary or unreasonable if that deprivation is based upon the individual's failure to comply with conditions or requirements imposed by the state for the protection of society. *Abramson*, 949 F.2d at 1580, quoting *Dent v. West Virginia*, 129 U.S. 114, 122, 32 L. Ed. 623, 626, 9 S. Ct. 231, 233 (1889).

■ The stated purpose of the Clinical Social Work and Social Work

Practice Act is to "protect and to benefit the public by setting standards of qualifications, education, training and experience for those who seek to engage in the independent practice of clinical social work and in the practice of social work and to promote high standards of professional performance for those engaged in the independent practice of clinical social work and in the practice of social work in the State of Illinois." 225 ILCS 20/1 (West 1996). In addition, the practice of clinical social work and the practice of social work "affect the public health, safety and welfare and [are] subject to regulation in the public interest." 225 ILCS 20/1 (West 1996).

■ In our view, the weight to be accorded the right to continue in the practice of a particular profession is not so great as to render the licensing statute here unconstitutional. See *Rios*, 63 Ill. 2d at 497. We find it beyond dispute that the state has a legitimate and significant interest in regulating the practice of social work. By its very nature, the field of social work deals with the lives and health of those who seek or require the services provided by that profession. Therefore, it is essential that those engaged in the practice of social work must have achieved a certain level of education and expertise in order to fulfill this important responsibility. The state's inherent police power gives it the right to enact reasonable legislation in order to protect the public health, safety, and welfare. That power certainly encompasses the right to establish licensing requirements for those engaged in the practice of social work.

We find it neither arbitrary nor capricious for the legislature to require licensed clinical social workers, the higher-tier classification, to satisfy advanced educational requirements. This is warranted based upon the need for such practitioners to be informed as to recent advancements in theory or technique and based upon the fact that those social workers who are licensed at the higher-tier classification often supervise the work of those licensed at the lower tier. Such educational mandates obviously bear a rational relationship to the state's interest in protecting the public.

The legislature is presumed to have investigated the question and ascertained what is best for the good of the profession and the good of the people among whom it is practiced. *Potts*, 128 Ill. 2d at 333. As noted above, the question of whether the course chosen by the legislature to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. *Shephard*, 152 Ill. 2d at 503. It is for the legislature, not the courts, to balance the advantages and disadvantages of the requirements. *Potts*, 128 Ill. 2d at 333, citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487, 99 L. Ed. 563, 571, 75 S. Ct. 461, 464 (1955).

We hold that the establishment of mandatory advanced educational requirements for licensed clinical social workers is rationally related to a legitimate state interest and is neither unreasonable nor arbitrary.

Admittedly, in both *Taylor* and *Berger* the court determined that the failure to include a "grandfather" clause in a licensing statute was an arbitrary and unreasonable exercise of the state's police power. See *Berger*, 521 F.2d at 1063; *Taylor*, 131 Ill. App. 2d at 311. However, we observe that both of those cases involved situations where the legislature had embarked upon regulation of a particular profession for the first time, a distinction of paramount importance. Here, the Illinois legislature had previously regulated the field of social work in 1967. The amendment of that portion of the Act relating to mandatory advanced educational requirements for licensed clinical social workers was consistent with the legislature's authority to set minimum educational standards in a regulated profession. See *Abramson*, 949 F.2d at 1580, citing *Donahue v. District of Columbia Board of Psychology*, 562 A.2d 116, 123 (D.C. App. 1989). The history of licensing and educational requirements in Illinois distinguishes this case from those in which a state has regulated a profession for the first time. See *Abramson*, 949 F.2d at 1580. Accordingly, we conclude that the plaintiff's substantive due process rights were not violated by the legislature's decision not to include in the Act a "grandfather" clause for licensed clinical social workers.

Plaintiff next contends that the Department lacked jurisdiction to issue a nondisciplinary cancellation of his license. We find no merit to this argument.

■■ Express legislative grants of powers or duties to administrative agencies include the power to do all that is reasonably necessary to execute those powers or duties. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 427, 519 N.E.2d 459 (1988); *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 289, 559 N.E.2d 884 (1990). Moreover, administrative agencies are to be given wide latitude in determining what actions are reasonably necessary, and a court may not overturn an agency policy or action simply because the court considers the policy unwise or inappropriate. *Smith*, 202 Ill. App. 3d at 289-90; *Oak Liquors, Inc. v. Zagel*, 90 Ill. App. 3d 379, 413 N.E.2d 56 (1980).

■■ Where the legislature has granted to the Department the authority, express and implied, necessary to effectively carry out and accomplish the objectives of the Act, the provisions of the Act should be construed accordingly. *O'Grady v. Cook County Sheriff's Merit Board*, 260 Ill. App. 3d 529, 535, 632 N.E.2d 87 (1994). The authority of the Department to cancel an invalid license may be implied from

the terms of the Act. See *O'Grady*, 260 Ill. App. 3d at 536. As noted above, the purpose of the Act is to "protect and to benefit the public by setting standards of qualifications, education, training and experience for those who seek to engage in the independent practice of clinical social work." 225 ILCS 20/1 (West 1996). Consequently, we hold that the Department has the authority to rescind or cancel a license that has been improperly or erroneously issued when the statutorily mandated educational requirements have not been satisfied.

Plaintiff also seeks reversal of the Department's decision, arguing that it was against the manifest weight of the evidence.

■■ On administrative review, it is not a court's function to reweigh the evidence or to make an independent determination of the facts, but merely to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992); *Murdy v. Edgar*, 103 Ill. 2d 384, 391, 469 N.E.2d 1085 (1984). An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88; *Whelchel v. Edgar*, 195 Ill. App. 3d 406, 409, 552 N.E.2d 394 (1990).

The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *Abrahamson*, 153 Ill. 2d at 88. The reviewing court may not substitute its judgment for that of the administrative agency. *Abrahamson*, 153 Ill. 2d at 88. If the record contains evidence to support the agency's decision, it should be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

■■ In the instant case, plaintiff claims that the final administrative decision issued by the Department was against the manifest weight of the evidence because he had not actually misrepresented his qualifications on his application for licensure as a licensed clinical social worker. The Department points out, however, that the cancellation of plaintiff's license was proper based upon his lack of eligibility for such license. Plaintiff acknowledged that he had received the October 1988 memorandum, which formally advised him that the 1989 Act required a graduate degree in order to be a licensed clinical social worker. Plaintiff had not earned an advanced educational degree, and he never claimed that he had been confused by the memorandum or the requirements under the 1989 Act. Plaintiff also admitted that he was never informed that the graduate degree requirement had been waived for him. The cancellation of plaintiff's license was premised upon the uncontroverted evidence that plaintiff did not meet the mandatory advanced educational requirements and, therefore, was

ineligible to be licensed as a clinical social worker. We hold this evidence was sufficient to support the decision of the Department.

· We next consider plaintiff's contention that the circuit court erred in failing to impose the doctrine of equitable estoppel to preclude the Department's cancellation of his license.

■ Although the doctrine of equitable estoppel is applicable to municipal corporations, courts do not favor its use against a public body. *Metropolitan Water Reclamation District v. Civil Service Board*, 291 Ill. App. 3d 488, 493, 684 N.E.2d 786 (1997). To invoke equitable estoppel against a public entity there must be an affirmative act on the part of the public entity and the inducement of substantial reliance by the affirmative act. *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 702 N.E.2d 593 (1998); *Halleck v. County of Cook*, 264 Ill. App. 3d 887, 894, 637 N.E.2d 1110 (1994); *Lindahl v. City of Des Plaines*, 210 Ill. App. 3d 281, 295, 568 N.E.2d 1306 (1991). The affirmative act that prompts a party's reliance must be an act of the public body itself, such as a legislative enactment, rather than the unauthorized acts of a ministerial officer or a ministerial misinterpretation. *Hamwi*, 299 Ill. App. 3d at 1095; *Lindahl*, 210 Ill. App. 3d at 295. A public entity cannot be estopped by an act of its agent that is beyond the authority expressly conferred upon that official. *Hamwi*, 299 Ill. App. 3d at 1095. If a public body were held bound through equitable estoppel by an unauthorized act of a governmental employee, then that entity would remain helpless to remedy errors and forced to permit violations " 'to remain in perpetuity.' " *Hamwi*, 299 Ill. App. 3d at 1095, quoting *Chicago v. Unit One Corp.*, 218 Ill. App. 3d 242, 246, 578 N.E.2d 194 (1991).

■ In the case at bar, there was no evidence that plaintiff had relied to his detriment upon the Department's erroneous issuance of his license. Plaintiff's employer did not require that he be licensed as a clinical social worker, and the record does not indicate that his position was prejudiced in any way based upon the action of the Department. It is undisputed that plaintiff can continue to work as a licensed social worker without having achieved the advanced educational requirements. Moreover, the imposition of equitable estoppel would necessarily be based upon the unauthorized issuance of the plaintiff's license, which obviously resulted from a mistake by a ministerial officer. As such, it cannot be allowed here. We conclude that the circuit court correctly determined that the Department must be permitted to remedy this error. See *Hamwi*, 299 Ill. App. 3d at 1095.

We also reject plaintiff's argument that the circuit court should have barred the Department from canceling his license based upon the doctrine of *laches*.

■ Generally, the doctrine of *laches* is applied when a party's failure to timely assert a right has caused prejudice to the adverse party. *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89, 630 N.E.2d 830 (1994); *People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470, 482, 521 N.E.2d 864 (1988); *Tully v. State*, 143 Ill. 2d 425, 432, 574 N.E.2d 659 (1991). The two fundamental elements of *laches* are (1) a lack of due diligence by the party asserting the claim and (2) prejudice to the opposing party. *Van Milligan*, 158 Ill. 2d at 89; *Tully*, 143 Ill. 2d at 432. Thus, the party asserting estoppel must show prejudice or hardship rather than mere passage of time and must demonstrate that the delay induced him to adversely change his position. *Schons v. Monarch Insurance Co.*, 214 Ill. App. 3d 601, 609, 574 N.E.2d 83 (1991). To that end, it is essential that the party asserting the defense plead and prove, not only that a considerable period of time has elapsed and that prejudice has resulted, but also that the opposing party had prior knowledge of the facts giving rise to the claim. *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 7, 626 N.E.2d 1066 (1993).

■ In addition, there is considerable reluctance to impose the doctrine of *laches* to the actions of public entities unless unusual or extraordinary circumstances are shown. *Van Milligan*, 158 Ill. 2d at 90; *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 447, 220 N.E.2d 415 (1966). This reluctance is founded upon the idea that the imposition of *laches* might " 'impair the functioning of the [governmental body] in the discharge of its government functions, and *** valuable public interests may be jeopardized or lost by the negligence, mistakes, or inattention of public officials.' " *Van Milligan*, 158 Ill. 2d at 90-91, quoting *Hickey*, 35 Ill. 2d at 447-48.

■ In the case before us, the record established that the Department did not discover until 1994 that plaintiff's license had been issued erroneously. Immediately thereafter, the Department sought to resolve the matter informally. When it became apparent that such attempts would not be successful, the Department filed its administrative complaint in May 1995. This cannot be characterized as an unreasonable delay, and plaintiff has not established that he was prejudiced in any way. Moreover, we find no compelling circumstances that would warrant the imposition of *laches* here. For five years, plaintiff was the recipient of a benefit, the higher-tier license, to which he was not entitled. The action taken by the Department merely restored him to the license for which he was qualified, that of the lower tier. Plaintiff has not complained that he has been prejudiced in any way by the fact that he held the higher-tier license for five years. Plaintiff has made no showing that he would have changed his position had the Depart-

ment acted properly in denying him the higher-tier license in 1990. We conclude the circuit court correctly ruled that the doctrine of *laches* did not apply to the instant case.

Finally, plaintiff asserts that the Department waived its right to challenge the validity of his license. Yet, plaintiff cites no authority for this proposition, and it is contradicted by the record. Upon discovering the erroneous issuance of plaintiff's license in 1994, the Department immediately sought to resolve the matter informally. When it became apparent that such attempts would not be successful, the Department filed its administrative complaint in May 1995. Plaintiff had notice as early as 1994 that the Department intended to rescind or to cancel his license. Based upon this evidence, it is clear that the Department did not voluntarily relinquish its right to challenge plaintiff's license.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL and QUINN, JJ., concur.