# Illinois Official Reports

## Appellate Court

---

***Shakari v. Department of Financial & Professional Regulation*,
2018 IL App (1st) 170285**

---

| | |
|---|---|
| Appellate Court Caption | BATU SHAKARI, Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION and JAY STEWART, in His Official Capacity as Director of the Division of Professional Regulation, Defendants- Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-17-0285 |
| Filed<br>Rehearing denied | February 20, 2018<br>March 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-16520; the Hon. Franklin Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lillian Walanka, of Crick Walanka Law Group, Ltd., of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Bridget DiBattista, Assistant Attorney General, of counsel), for appellees. |

JUSTICE MIKVA delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Harris concurred in the judgment and opinion.


## OPINION

¶ 1     Plaintiff Batu Shakari worked as a licensed health care worker—first as a licensed practical nurse (LPN) and then as a registered nurse (RN)—for over 30 years. The Illinois Department of Financial and Professional Regulation (Department) was aware, both when it initially approved Mr. Shakari's LPN license and, in the intervening years, when it consistently renewed his LPN and RN licenses, of Mr. Shakari's prior conviction for attempted murder in 1975 and the circumstances surrounding that conviction. Mr. Shakari was never subject to disciplinary action and was never charged with another crime.

¶ 2     In 2011, the General Assembly passed section 2105-165 of the Department of Professional Regulation Law (20 ILCS 2105/2105-165 (West 2014)), which requires the permanent revocation without a hearing of the license of any health care worker who, among other things, "has been convicted" of a forcible felony. Although the Department renewed Mr. Shakari's RN license after this law took effect, in 2015 it determined, based on the language of the statute and the fact that attempted murder is elsewhere classified as a forcible felony, that his license should be revoked. Mr. Shakari sought administrative review of that decision in the circuit court, and the court affirmed the Department's revocation order.

¶ 3     On appeal, Mr. Shakari argues that section 2105-165 does not apply to individuals who, like him, received their convictions before they became health care workers. Mr. Shakari also argues that, by renewing his license after section 2105-165 was passed and again after it took effect, the Department was estopped from revoking his license.

¶ 4     For the following reasons, we affirm the Department's revocation order.


## I. BACKGROUND

¶ 6     In 1975, Mr. Shakari, then known as David Beverly, was convicted of attempted murder. He was 21 years old. This court reversed Mr. Shakari's conviction and remanded his case for a new trial, at which point Mr. Shakari agreed to enter a plea of guilty to attempted murder in exchange for a sentence of time served and two years of probation.

¶ 7     Mr. Shakari completed his probation and went on to pursue his education and a nursing career. He obtained a licensed practical nursing degree in 1981 and, after disclosing and appearing before the committee of nurse examiners to explain his prior conviction, was allowed to sit for the state licensing examination. The Department approved Mr. Shakari's LPN license in 1982. Several years later, Mr. Shakari returned to school to obtain an associate's degree in nursing and, after again disclosing his prior felony, was allowed to sit for the licensing examination. The Department approved Mr. Shakari's RN license in 1989 and consistently renewed that license until 2015. Mr. Shakari was never subject to disciplinary action under either his LPN license or his RN license.

¶ 8     In 2011, the General Assembly passed section 2105-165, which provides that "[w]hen a licensed health care worker *** (3) has been convicted of a forcible felony[,] *** the license

of the health care worker shall by operation of law be permanently revoked without a hearing." 20 ILCS 2105/2105-165(a) (West 2014). Attempted murder is a forcible felony in Illinois. 68 Ill. Adm. Code 1130.120(a), (c), (jj), amended at 37 Ill. Reg. 7479 (eff. May 31, 2013). Section 2105-165 took effect on July 31, 2012. As it had before, the Department renewed Mr. Shakari's license in 2012, after section 2105-165 was passed, but before it took effect. Throughout the spring and summer of 2014, however, there was an unusual delay in the renewal of Mr. Shakari's license. After corresponding with the Department, Mr. Shakari finally received a notification that his license had been renewed, along with an apology for the delay, which Department personnel indicated "was due to a positive answer [he] provided on [the] personal history questions on [his] renewal form."

¶ 9    But on August 17, 2015, the Department notified Mr. Shakari that it intended to permanently revoke his RN license pursuant to section 2105-165. Relying on our supreme court's decision in *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, the Department rejected Mr. Shakari's argument that section 2105-165 did not apply to him and permanently revoked his RN license on September 30, 2015.

¶ 10    Mr. Shakari timely filed a complaint for administrative review in the circuit court against the Department and Jay Stewart, its director of professional regulation. In his *pro se* brief in support of that complaint, Mr. Shakari argued that the plain language of section 2105-165 did not apply to him because he was not a health care worker at the time of his conviction, a fact he contended distinguished his case from *Hayashi*, which involved three individuals who were already licensed health care workers when they were convicted. Mr. Shakari further argued that the intent of the legislature was not served by predicating revocation of his license on a prior conviction that was unrelated to patient care and did not qualify him as a sex offender, that the Department's erroneous reading of section 2105-165 and of *Hayashi* prevented it from considering his case in a fair and impartial manner, and that, because the Department had issued him a license with full knowledge of his prior conviction, its revocation of that license was "a violation of its previous judgment on the issue." In his reply brief, Mr. Shakari argued that the Department's decisions to renew his license in 2012 and 2014 "collaterally estopped" it from later revoking his license pursuant to section 2105-165.

¶ 11    At the circuit court hearing in this matter, Mr. Shakari, now represented by counsel, reiterated these arguments and stressed that the case was one that "crie[d] out for an equitable and a legal solution." In questioning Mr. Shakari's counsel, the circuit court expressed its view that, previously, the Department "had some discretion as to what penalty, if at all, they would exercise" but "the statute does away with th[at] discretion."

¶ 12    Counsel for the Department, who made clear that he had not understood Mr. Shakari to be making an estoppel argument in his brief before the circuit court, nevertheless addressed what he referred to as "plaintiff's equitable estoppel argument" at the hearing. He stated that, "even if the Department did issue a renewal license in 2014," there was no reason "that [the Department's] mistake of law should serve as some sort of precedent that would prohibit them from following the law where they d[id] not have any discretion."

¶ 13    Having considered the parties' arguments, the circuit court affirmed the Department's revocation order. The court concluded that it was bound by *Hayashi* to reject Mr. Shakari's interpretation of the Department of Professional Regulation Law, stating:

"The Illinois Supreme Court in the *Hayashi* decision held that the plain language of the Act related to the phrase 'had been convicted' clearly indicates the legislative intent to subject persons to the Act without regard to the date of their conviction.

Other arguments addressed or advanced—excuse me—by the plaintiff, this Court also finds were front and center and directly addressed by the *Hayashi* decision and rejected by the Illinois Supreme Court in *Hayashi* such as, plaintiff's argument regarding retroactivity and due process; therefore, the Court finds that those arguments have already been decided by *Hayashi* and the Court is certainly in no position to review a Supreme Court decision."

¶ 14    Although the court found that Mr. Shakari's estoppel argument was "not specifically articulated in his memorandum in support" of his complaint, it also found that the issue was properly before it because the Department "was able to articulate *** a cogent argument regarding estoppel" at the hearing.

¶ 15    The court went on to address, not collateral estoppel, but *equitable* estoppel, a doctrine it noted courts do not favor applying against public bodies. Although the court expressed sympathy for Mr. Shakari's situation, it concluded that the doctrine did not apply because the new law eliminated the Department's authority to renew Mr. Shakari's license. As the court explained:

"Here, the revocation, per the Act, acts and applies as a matter of law. The 2014 renewal of the plaintiff's license was unauthorized under the Act. As such, plaintiff cannot rely on that unauthorized [a]ct to support a claim for equitable estoppel. Plaintiff here presents, beyond words, a very sympathetic case. Plaintiff has, by all accounts, been a contributing member to society who has more than paid his share for his previous acts.

The arguments relating to the facts and reasons why this now approximately 40-year-old conviction should not prevent him from practicing his chosen profession, a profession in which—from this Court's—excuse me—from the record before the Court, he has not faced any criminal or disciplinary action as a nurse, are compelling. This Court, however lacks authority to depart from the General Assembly's mandate."

¶ 16    The circuit court also noted that Mr. Shakari could avail himself of amendments to section 2105-165 that became effective in January 2017, which permit individuals whose health care licenses were revoked as a result of certain prior forcible felony convictions to petition the Department for restoration of their licenses. Pub. Act 99-886 (eff. Jan. 1, 2017) (amending 20 ILCS 2105/2105-165(a-1)).

¶ 17    Mr. Shakari now appeals the circuit court's order affirming the Department's revocation of his license.

¶ 18                                II. JURISDICTION

¶ 19    The circuit court affirmed the Department's permanent revocation of Mr. Shakari's RN license on January 5, 2017, and Mr. Shakari timely filed his notice of appeal on February 1, 2017. We have jurisdiction over this matter pursuant to section 3-112 of the Code of Civil Procedure (735 ILCS 5/3-112 (West 2016)), making final orders in administrative review cases reviewable by appeal as in other civil cases, and Illinois Supreme Court Rules 301 and

303, governing appeals from final judgments of the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 20                                            III. ANALYSIS

¶ 21       On appeal, Mr. Shakari argues that the Department erroneously construed section 2105-165 to apply equally to individuals like the plaintiffs in *Hayashi*—who were licensed health care workers before they were convicted—and to individuals like him, whose convictions predate their licensure. Mr. Shakari also argues that, by renewing his license after the section 2105-165 was passed and again after it took effect, the Department was estopped from revoking his license. Although Mr. Shakari asserts that the circuit court misconstrued his collateral estoppel argument as one based on equitable estoppel, on appeal he argues that reversal is warranted under either theory. We address each argument in turn.

¶ 22                                      A. Statutory Construction

¶ 23       Mr. Shakari contests neither the fact of his prior conviction for a forcible felony nor that this is an offense that can trigger the revocation of a health care worker's license under section 2105-165. He also recognizes that in *Hayashi* our supreme court held that revocation may be based on a conviction predating the effective date of the statute. Mr. Shakari argues that section 2105-165 applies only to individuals who, unlike him, were convicted *after* they became health care workers. This is a question of statutory construction that we review *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). Where, as here, a case "involve[es] an agency's interpretation of a statute [that] the agency is charged with administering," we consider the agency's interpretation to be "relevant but not binding." *Id.* "In construing a statute, our goal is to effectuate the intent of the legislature, with the plain and unambiguous language enacted providing the most reliable indicator of that intent." *Manago v. County of Cook*, 2017 IL 121078, ¶ 10.

¶ 24       Section 2105-165(a) of the Act provides as follows:

        "(a) When a licensed health care worker, as defined in the Health Care Worker Self-Referral Act [(225 ILCS 47/1 *et seq.* (West 2014))], (1) has been convicted of a criminal act that requires registration under the Sex Offender Registration Act [(730 ILCS 150/1 *et seq.* (West 2014))]; (2) has been convicted of criminal battery against any patient in the course of patient care or treatment \*\*\*; (3) *has been convicted of a forcible felony*; or (4) is required as part of a criminal sentence to register under the Sex Offender Registration Act, then, notwithstanding any other provision of law to the contrary, except as provided in this Section, *the license of the health care worker shall by operation of law be permanently revoked without a hearing*." (Emphases added.) 20 ILCS 2105/2105-165(a) (West 2014).

¶ 25       In concluding that section 2105-165 applied to Mr. Shakari, both the Department and the circuit court believed themselves bound by our supreme court's decision in *Hayashi*, 2014 IL 116023. The plaintiffs in *Hayashi*—two doctors and a chiropractor—were charged with sexual misconduct with patients or the inappropriate touching of patients and convicted—before section 2105-165 took effect—of either criminal misdemeanor battery or criminal sexual abuse. *Hayashi*, 2014 IL 116023, ¶¶ 5-8. The Department revoked the plaintiffs' licenses shortly after section 2105-165 went into effect, and they filed suit, seeking injunctive relief and a declaration that the law only applied to convictions imposed after its

effective date. *Id.* ¶ 9. The circuit court dismissed the plaintiffs' claims, and both the appellate court and the supreme court affirmed. *Id.* ¶¶ 10, 52.

¶ 26 Our supreme court declined to focus on the policy concerns raised by the *Hayashi* plaintiffs because it found the language of section 2105-165 to clearly and unambiguously apply to convictions imposed both before and after that section's effective date. *Id.* ¶ 18. It also rejected the plaintiffs' arguments that, if section 2105-165 was applied to them, it would be impermissibly retroactive in violation of their right to substantive due process. *Id.* ¶¶ 25-26. The court concluded that, because it "affect[ed] only the present and future eligibility of [individuals] to *continue* to use their health care licenses" (emphasis added), the law was "solely prospective," even though it drew on the antecedent fact of a past conviction for its operation. *Id.* ¶ 26.

¶ 27 Mr. Shakari correctly notes that, unlike him, all three of the *Hayashi* plaintiffs were licensed health care workers before they received the convictions that triggered the revocation of their licenses under section 2105-165. Mr. Shakari invites us to distinguish *Hayashi* on this basis and to view the circumstances of his case as an "unresolved area" of the law. We do not agree that we are at liberty to do so. The *Hayashi* court noted that, in reference to the triggering offenses listed in section 2105-165(a), the legislature used the phrase "has been convicted" rather than "is convicted." In its view, this use of the present perfect tense—"a verb form used to denote action beginning in the past and continuing to the present" (internal quotation marks omitted)—refers "to health care workers who hold the status of having been convicted of a particular offense, *no matter when that status was obtained*" and "clearly indicates the legislative intent to subject persons to the Act *without regard to the date of their convictions*." (Emphases added.) *Id.* ¶¶ 17-18. These statements apply equally to Mr. Shakari's case.

¶ 28 Mr. Shakari fails to offer a straightforward reading of the language of section 2105-165 that would draw a distinction between health care workers, like himself, who were convicted before they received their licenses and health care workers, like those in *Hayashi*, convicted after they were licensed. In either situation the licensee is currently a health care worker who, at some time in the past, "has been convicted" of a triggering offense. The relevant point in time for assessing a licensee's status as a health care worker who "has been convicted" of a triggering crime is the moment when the license is revoked. As our supreme court made clear in *Hayashi*, it does not matter how long ago the conviction resulting in that status occurred.

¶ 29 Nor has Mr. Shakari articulated any policy reason why the legislature might wish to exempt health care workers with felonies predating their licensure. This intent would be particularly incongruous since the statute also prevents new applicants with the same kind of criminal records from receiving licenses in the first instance. See 20 ILCS 2105/2105-165(b) (West 2014) ("No person who has been convicted of any offense listed in subsection (a) or [is] required to register as a sex offender may receive a license as a health care worker in Illinois.").

¶ 30 Mr. Shakari also unpersuasively argues that the circuit court in this case improperly extended section 2105-165 to criminal acts not involving patient care. In support of this argument, he relies on certain statements the supreme court made in *Hayashi* regarding the law's purpose. But the court in *Hayashi* was concerned only with section 2105-165(a)(2), the portion of the statute that applied to the plaintiffs in that case. That section is focused on "criminal battery against any patient in the course of patient care or treatment." 20 ILCS

2105/2105-165(a)(2) (West 2014). Section 2105-165(a)(3), which the Department relied on in Mr. Shakari's case, applies to all forcible felonies and is in no sense limited to those committed against patients. 20 ILCS 2105/2105-165(a)(3) (West 2014); see also *Shushunov v. Illinois Department of Financial & Professional Regulation*, 2017 IL App (1st) 151665, ¶ 36.

¶ 31    In sum, we agree with the circuit court and with the Department that under our supreme court's clear articulation in *Hayashi* of the scope of section 2105-165, Mr. Shakari's license was properly revoked pursuant to that section.

¶ 32                                    B. Estoppel

¶ 33    We next consider Mr. Shakari's argument that, because the Department renewed his license in 2012, after section 2105-165 was passed, and again in 2014, after it went into effect, the Department was estopped from later revoking his license pursuant to that same section. According to Mr. Shakari, although the circuit court incorrectly believed this was an argument based on the doctrine of equitable estoppel, rather than collateral estoppel, we may reverse the Department's revocation order under either doctrine.

¶ 34    We first address the Department's contention that Mr. Shakari forfeited any estoppel-based argument by raising it for the first time in his reply brief in the circuit court. "In general, issues or defenses not placed before the administrative agency will not be considered for the first time on administrative review." *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998) (citing 735 ILCS 5/3-110 (West 1994)). Arguments raised for the first time in a reply brief are also subject to forfeiture. *Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 263 Ill. App. 3d 539, 546 (1994). Although Mr. Shakari was not represented by counsel either in the proceedings before the Department or during briefing in the circuit court, principles of forfeiture apply equally to *pro se* litigants. *Porter v. Urbana-Champaign Sanitary District*, 237 Ill. App. 3d 296, 299 (1992). In response to the Department's forfeiture argument, Mr. Shakari contends that it is clear from the factual allegations in his response filed with the Department that he intended to argue estoppel.

¶ 35    It unnecessary for us to decide whether the inclusion of those allegations in Mr. Shakari's response filed with the Department was sufficient to preserve the issue for administrative review. It is evident from the record that the Department failed to object to the introduction of Mr. Shakari's estoppel argument in the circuit court. Indeed, as the circuit court judge noted, the Department responded to the argument substantively at the hearing in this matter. Under these circumstances, it is the Department's objection, and not Mr. Shakari's argument, that has been forfeited. See *Wilfert*, 263 Ill. App. 3d at 546 (finding no forfeiture where a plaintiff's argument was raised for the first time in his reply brief on administrative review but where the agency could have, but did not, argue forfeiture at that time). We thus consider the merits of Mr. Shakari's estoppel argument. And we do so in reference to both collateral estoppel, the doctrine Mr. Shakari intended to base his argument on, and equitable estoppel, the doctrine the circuit court analyzed.

¶ 36    We agree with Mr. Shakari that collateral estoppel and equitable estoppel are two distinct legal theories. The former "prevents the relitigation of issues resolved in earlier causes of action" where there was a final judgment on the merits against the party against whom the doctrine is asserted (or someone in privity with that party). *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010). The latter applies when a party makes a knowing

misrepresentation of material fact that another party reasonably relies on and when the relying party would be prejudiced if the representing party were later allowed to deny the truth of the representation. *Falcon Funding, LLC v. City of Elgin*, 399 Ill. App. 3d 142, 157-58 (2010). For our purposes, however, it does not matter whether the circuit court applied the wrong legal doctrine. "In administrative cases, we review the decision of the administrative agency, not the determination of the circuit court" (*Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007)), and where, as here, the application of either doctrine is based on a question of law, our review is *de novo* (*In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 26; *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42). Mr. Shakari's position on appeal is that the Department was barred from revoking his license under either doctrine.

¶ 37    An analysis of the elements of the two doctrines is unnecessary, however, because neither collateral nor equitable estoppel can be based on the unauthorized act of an administrative agency. Section 2105-165 unambiguously revokes the licenses of certain health care workers "by operation of law." As such, it is really the State of Illinois, as principal, that Mr. Shakari argues was estopped from revoking his license, based on the actions of its agent, the Department. But this contradicts the longstanding rule that a government body "cannot be estopped by an act of its agent beyond the authority conferred upon him." *Rippinger v. Niederst*, 317 Ill. 264, 275 (1925) (holding that a city was not estopped by the actions of its building commissioner who, acting in his official capacity as a representative of the city, issued a building permit he was not authorized to issue under the applicable zoning ordinance).

¶ 38    The rule is frequently applied in cases where an administrative agency, whether due to the error of a ministerial employee or otherwise, has acted beyond the scope of its authority to issue or renew a license or permit. See, *e.g.*, *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649 (1999) (holding that the unauthorized issuance of the plaintiff's social worker's license by a governmental employee did not prevent the later revocation of the license when it was discovered that the plaintiff did not meet the necessary educational requirements for such a license); *Armond v. Sawyer*, 205 Ill. App. 3d 936, 939 (1990) (holding a municipality was not estopped from revoking the plaintiff's liquor license simply because the local liquor commission had renewed the license in violation of a referendum limiting the sale of unpackaged alcohol); *Lake Shore Riding Academy, Inc. v. Daley*, 38 Ill. App. 3d 1000, 1003 (1976) (holding that a zoning department's renewal of a license to operate a riding stable in violation of a zoning ordinance was an unauthorized act that did not prevent the municipality from revoking the license); *People ex rel. Satas v. City of Chicago*, 5 Ill. App. 3d 109, 113 (1972) (holding that the approval of an application for a laundromat license that violated a local zoning ordinance was "clearly beyond the scope" of the issuing employee's authority and could not form the basis for a defense of equitable estoppel).

¶ 39    Although the rule is typically applied where a party has argued equitable estoppel, the result is the same under a theory of collateral estoppel. As our supreme court has explained, administrative agencies "have no general or common law powers" but are "statutory creature[s]," and "must find within the statute the authority which [they] claim[ ]." *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112-13 (1976). When the order of an agency exceeds the agency's jurisdiction, that order is void. *Id.* And when an

agency mistakenly believes that it has the authority to take certain actions, that misapprehension of the law cannot form the basis for a defense of collateral estoppel. See *Superior Coal Co. v. Department of Revenue*, 4 Ill. 2d 459, 468 (1954) (finding no collateral estoppel where an agency made and followed erroneous rules and regulations based on its misinterpretation of a statute).

¶ 40 Here, the Department's renewal of Mr. Shakari's license in 2012 is of no consequence because, prior to the effective date of section 2105-165, the Department still had the discretion to renew his license. And the Department's unauthorized renewal of Mr. Shakari's license in 2014 had no effect on the enforceability of the law in Mr. Shakari's case or on the Department's obligation to comply with it.

¶ 41 Mr. Shakari's concerns with the harshness of section 2105-165(a)(3) are well taken, and fortunately the legislature last year amended section 2105-165 to include a provision, at subsection (a-1), allowing individuals like Mr. Shakari to petition the Department for restoration of their licenses. Pub. Act 99-886 (eff. Jan. 1, 2017) (amending 20 ILCS 2105-165(a-1)). Specifically, that provision allows individuals convicted of forcible felonies that are not sex offenses to petition for restoration of their licenses if more than five years have passed since the date of their triggering convictions or more than three years have passed since their release from confinement from that conviction.

¶ 42 Mr. Shakari has expressed concern that, even if he successfully avails himself of this provision, the fact that his license was once revoked will remain on his record. However, in its motion for leave to cite supplemental authority—which we granted—the Department highlights another part of the 2017 amendment, providing that licensees subject to disciplinary action may apply to have their disciplinary histories "classified as confidential and not for public release and considered expunged for reporting purposes," so long as they have no new disciplinary incidents or pending investigations and three years have passed since their disciplinary offense or the restoration of their license, whichever is later. Pub. Act 100-262 (eff. Aug. 22, 2017) (amending 20 ILCS 2105/2105-207(a)). By focusing on these amendments, the Department appears not only to encourage Mr. Shakari to mitigate the harsh consequences of section 2105-165(a) by petitioning for restoration of his license but to recognize that restoration of his license is the appropriate outcome here.

¶ 43 In sum, we agree with the circuit court that the enactment of section 2105-165, which provides for the revocation of certain health care workers' licenses "by operation of law," eliminated the Department's discretion to renew the licenses of such individuals. The Department's unauthorized renewal of Mr. Shakari's license after the law's effective date cannot give rise to a defense of collateral or equitable estoppel.

¶ 44                                         IV. CONCLUSION

¶ 45 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 46 Affirmed.